258 Md. 490 (1970)
265 A.2d 892
DEWEY JORDAN, INC.
v.
THE MARYLAND-NATIONAL CAPITAL PARK AND PLANNING COMMISSION
[No. 393, September Term, 1969.]
Court of Appeals of Maryland.
Decided June 9, 1970.
Motion for rehearing filed July 8, 1970.
Denied July 27, 1970.
*491 The cause was argued before HAMMOND, C.J., and McWILLIAMS, FINAN, SINGLEY, SMITH and DIGGES, JJ.
William M. Canby, with whom were Miller, Miller & Canby and Darrel Lee Longest on the brief, for appellant.
Sanford E. Wool for appellee.
FINAN, J., delivered the opinion of the Court.
This is an action at law for breach of contract whereby the appellant, Dewey Jordan, Inc., contractor, seeks to recover $36,448 from the Maryland-National Park and Planning Commission, contracting authority, a public body corporate. The subject matter of the contract was the construction of an earthen dam on Rock Creek, Montgomery County. The contract price was $374,960 of which 94.6% was furnished by the United States Government through the Soil Conservation Service of the Department of Agriculture. The contracting authority initiated the project as a part of its park system, for the purpose of providing both recreational facilities and flood control. All engineering design and studies were performed by the Soil Conservation Service with final approval by the contracting authority. Contract documents were prepared with the assistance of the Soil Conservation Service on its forms. As part of the invitation to bid, the contracting authority gave the contractor a set of plans and specifications.
The contract was executed on November 29, 1965, and provided for completion of the dam within 252 days after receipt of notice to proceed. Among the provisions of the "Construction Specifications," sub-title "Rock Fill," were the following pertinent sections:
"§ 6.2. Materials

6.2.1 The rock shall be sound, durable and of suitable quality to assure performance in the climate *492 in which it is used. The rock shall be obtained from required excavations or other approved sources. This material shall be well graded with maximum dimension of thirty-six (36) inches and enough fines to fill the voids."
From the record it appears to be an undisputed fact that the plans upon which the contractor bid the job and initiated the work provided that the "Down Stream Rock Fill" material was to be taken from designated borrow pits located near the job site and on the Park lands. Prior to the invitation for bids, the contracting authority conducted a series of test borings in these areas to determine suitability of the material and the data thus obtained was included in the plans.
Notice to proceed with the contract was received by the contractor on December 8, 1965, and work commenced two days thereafter. Work continued without interruption until October 17, 1966, when the contracting authority discovered that the "Downstream Rock Fill" material was too fine. Through a representative of the Soil Conservation Service on the job, a Mr. Jon De Groot, a "Suspend Work Order" was issued "that tests may be made on `Downstream Rock Fill' to determine effectiveness of drainage system." As a result of the order, construction operations were shut down and the contractor's men and equipment stood idle until November 14, 1966. On this last date the contracting authority issued an order to resume work stating, inter alia, "Evaluation of Drainage System Complete. Corrective measures will not require removal of completed work." The corrective measures referred to were embodied in "Contract Modification No. 5" issued pursuant to the "Changes" article of the contract and consisted of the addition of a "toe drain" to the original dam structure.
At this juncture, for an understanding of the issue before this Court, it will be helpful to refer to pertinent provisions of the "Changes" article and "Suspension of Work" article of the contract:

*493 "3. Changes:

The Contracting Officer [chief engineer of the contracting authority] may, at any time by written order, and without notice to the sureties make changes in the drawings and/or specifications of this contract if within the general scope. If such changes cause an increase or decrease in the Contractor's cost of, or time required for, performance of the contract, an equitable adjustment shall be made and the contract modified in writing accordingly. * * *"
26. Suspension of Work:

(a) The Contracting Officer may order suspension of the work in whole or in part for such time as he deems necessary due to weather or such other conditions as he considers unfavorable for the satisfactory prosecution of the work. (Emphasis supplied.)
* * *
(c) The Contracting Officer may order suspension of the work in whole or in part for such times as he deems necessary because of the failure of the Contractor to comply with any of the provisions of this contract * * *.
* * *
(d) When the Contracting Officer orders any suspension of the work under the provisions of this clause, the Contractor shall not be entitled to any costs or damages resulting from delays due to such suspension of the work.
The contractor claims that the one month shut down of the job, due to no fault of its own, cost it $36,448 the amount for which suit was brought. In its amended declaration the contractor sought to establish its right to recovery on three grounds, (1) in assumpsit for work done and materials provided; (2) that under the "Changes" article, the contracting authority was required to pay the contractor its costs during the shutdown and in failing *494 to do so, breached the contract; and (3) on the theory that there was an implied warranty that the plans and specifications of the contracting authority were suitable for the construction of the dam and that this warranty was breached when the contracting authority shut down the job to investigate the "Downstream Rock Fill" material and thereafter modified the contract to include installation of the "toe drain."
The matter was tried before the lower court without a jury which, after hearing much testimony and argument from counsel, rendered judgment in favor of the defendant-contracting authority. Judge Shearin, in a well reasoned opinion, thought that the case was controlled by the interpretation given the "Changes" article of the contract by the Court in United States v. Rice, 317 U.S. 61 (1942), a case which we will later discuss. However, we do not believe Rice to be apposite and for the reasons we shall proceed to relate, we reverse the judgment given below.
This appeal presents us with two questions:
1. Does either the "Suspension of Work" article or the "Changes" article of the contract dispose of the issues in this case?
2. Did the lower court err in not finding that there was an actionable breach of an implied warranty that the plans and specifications were adequate and sufficient for the purposes intended?
The appellee relying on United States v. Rice, 317 U.S. 61 (1942), argues that it should prevail as § 26(a) of the "Suspension of Work" article of the contract gives it the right to request a reasonable work suspension, and that the suspension of work in the instant case was a reasonable one for a reasonable purpose, namely, "to investigate and test certain suspicious circumstances that arose during the construction of the dam." Accordingly, the contractor had to bear the standby costs incident to such stoppage. Furthermore, appellee contends that under the "Changes" article compensation may properly *495 be allowed for increased work or materials but not for the idle time necessitated by the change.
In Rice, supra, both the questions of change and suspension of work were before the Court and as a landmark case in the area of law relating to construction contracts, it deserves comment. In Rice the contractor (D.C. Engineering Co., Inc.) had agreed to install plumbing, heating and electrical equipment in a Veterans' Home in Maine. When the contractor arrived on the job site with its work force and equipment in June of 1932, it found that the Government had ordered the general contractor to stop work "because of the unexpected discovery of an unsuitable soil condition." Work was finally resumed in October. The Government extended the contractor's performance as a result of the four months delay. The D.C. Engineering Co., Inc. had, in the meantime, become bankrupt and the receiver for the corporation, Rice, on its behalf, sued the Government for damages resulting from the delay. Mr. Justice Black, writing for the Court, reversed the Court below which had allowed the claim, stating:
"* * * `It was never contemplated  that delays incident to changes would subject the Government to damage beyond that involved in the changes themselves.' Moran Bros. Co. v. United States, 61 Ct. Cls. 73, 102; and for the same view, see McCord v. United States, 9 Ct. Cls. 155, 169; Swift v. United States, 14 Ct. Cls. 208, 231; Griffiths v. United States, 74 Ct. Cls. 245, 255." 317 U.S. 61, 67.
* * *
"In this case there were two consequences of the discovery that the Home could not be built as originally planned. One was an alteration of specifications, which resulted in a slight cut in respondent's outlay and in its compensation. The other was the delay itself, and for this the time necessary to perform the contract was *496 equitably adjusted by extension, thereby relieving respondent of liquidated damages which could otherwise have been imposed. Under the terms of the contract, it is entitled to no more." 317 U.S. 69.
The Rice case spawned a spate of cases involving nuances of its meaning, as may be gathered from a reading of the exhaustive treatment of the subject given by Joel P. Shedd, Jr., Esquire, in his article "The Rice Doctrine and the Ripple Effect of Changes," 32 Geo. Wash. L. Rev. 62 (1963). See also "Delays, Suspension, Acceleration," Government Contracts Monograph No. 9, Government Contracts Program, The George Washington University (1964).
The Rice doctrine as it may have affected the instant case, were we to adopt the appellee's theory of the case, is summarized in part by the "Shedd" article in these words:
"The changes clause, in giving the government the right to order changes in specifications during performance, by necessary implication gives the government the right to take a reasonable time to make such changes; hence, it is not a breach of contract for the government to delay the contractor's performance for a reasonable time. The contractor cannot recover damages for breach of contract for the delay expense resulting from the reasonable time taken by the government to make the change, and the expense of such reasonable delay is not a cost which can be allowed in computing the equitable adjustment in price for the change; hence, it is an expense which must be absorbed by the contractor out of the original contract price."
Were we of the opinion that the decision in the case at bar turned on the law as set forth in Rice, we might be compelled to explore the ramifications of the Rice doctrine, *497 as well as much of the criticism that has been leveled against it. However, we do not believe the Rice doctrine applicable to the instant case, as the facts in this case are distinguishable from Rice.
Rice concerned itself with newly discovered conditions which were not the fault of either the contracting authority or the contractor and were not the result of faulty specifications. In the case at bar we think the suspension of work was due to faulty specifications regarding the "Rock Fill." Judge Shearin did not so think and held the Rice case dispositive of the matter. If we did not believe the delay to be due to defective specifications prepared by the contracting authority, we might agree with the lower court and apply Rice. However, we are persuaded by the logic of the contention that if the specifications and instructions of the contracting authority, regarding the use of the "Rock Fill," had produced a satisfactory result, the delay would not have ensued.
We are aware that Maryland Rule 886 a requires this Court to accept the judgment of the lower court regarding matters of evidence, where the case is heard below without a jury, unless the judgment is clearly erroneous. However, in the instant case, the matter of the import of the specifications regarding the "Rock Fill" is a mixed question of law and fact and we think the lower court reached a clearly erroneous judgment on that evidence.
In the instant case, the contracting authority made elaborate tests, the results of which were printed as a part of the plans and specifications. Subsequent events made it obvious that a wrong evaluation was placed on these tests. Not only was Mr. Jon De Groot, the contracting authority's representative, suspect of the appearance of the "Rock Fill," but events finally determined that the dam structure had best be modified by the addition of a "toe drain." This latter work was done to complement the drainage function of the "Rock Fill."
In our opinion the instant case is controlled by the line of cases which follow U.S. v. Spearin, 248 U.S. 132 (1918); Laburnum Construction Corp. v. United States, *498 325 F.2d 451 (Ct. Cl., 1963); and J.D. Hedin Construction Co. v. U.S., 347 F.2d 235 (Ct. Cl. 1965). These cases all support the theory that the contracting authority impliedly warrants that the plans and specifications are adequate and sufficient for the purpose intended and that the contractor is entitled to be compensated for delays in work occasioned by faulty plans and specifications. The following language from Laburnum, supra, clearly sets forth the law as it applies to the case at bar:
"* * * plaintiff maintains that any Government-caused delay was a breach of contract for which it ought to recover. Defendant says that the changes article permitted it to delay the contractor while it made changes in the specifications, and that, under that clause, plaintiff is entitled to receive only an extension of time and an equitable adjustment of the price to cover the increase in time and costs, plus a reasonable profit incident to the making of the change.
"We think the critical factor in this case is that all of the delay to which plaintiff was subjected came about because the specifications were deficient. Were this not the case, defendant's contention would be correct: plaintiff would have no right to complain if the defendant's exercise of its reserved right to make changes set its work schedule awry. See J.A. Ross & Co. v. United States, 115 F. Supp. 187, 126 Ct. Cl. 323 (1953). At least this would be so if defendant had acted with due alacrity. See Anthony P. Miller, Inc. v. United States, 77 F. Supp. 209, 111 Ct. Cl. 252 (1948). In this case, however, plaintiff had contracted to do the work in accordance with the specifications defendant had prepared, and defendant was, therefore, under a duty not to render the project more expensive than it would have been if the contractor could have complied with the plans. In United States v. Spearin, 248 U.S. 132, 39 S.Ct. 59, *499 63 L.Ed. 166 (1918), the Supreme Court held that, in a case where the specifications prescribe the character, dimensions and location of the construction work, the Government implicitly warrants that the contractor, if he complies with the specifications, will be able to complete the project within the contemplated period of time. This warranty is akin to the condition implied in every construction contract that neither party will do anything to hinder the performance of the other party. See J.A. Ross & Co. v. United States, supra; George A. Fuller Co. v. United States, 69 F. Supp. 409, 108 Ct. Cl. 70 (1947). If faulty specifications prevent or delay completion of the contract, the contractor is entitled to recover damages for the defendant's breach of its implied warranty. United States v. Spearin, supra; Warren Bros. Roads Co. v. United States, 105 F. Supp. 826, 123 Ct. Cl. 48 (1952). Those damages extend to the costs incurred by reason of the idleness resulting from the mistakes in the plans. The defendant cannot, by errors in the specifications, cause delay in plaintiff's completion of the work and then compensate plaintiff merely by extending its performance time and by payment of any added direct cost occasioned by changes to correct those errors." 325 F.2d 457.
Both Laburnum, supra, and J.D. Hedin Construction Co., supra, which were decided after Rice, distinguished Rice on the facts, just as we have done in the instant case.
In our opinion any attempt to bring a defect in specifications within the purview of the "other conditions" clause of the "Suspension of Work" article, § 26(a) of the Contract, would, in a case such as we now have before us, afford an unfair and inequitable escape route for the contracting authority. Such an exculpatory interpretation would fly in the face of the Court's decision in Laburnum.
*500 There is a dearth of cases regarding "Changes" and "Suspension of Work" in construction contracts in this jurisdiction. There is, however, a vast body of law on this point among the federal cases. See the Changes Clause in Federal Construction Contracts, Nash and Cibinic, 35 Geo. Wash. L. Rev. 908, and "Changes Clause in Government Construction Contracts," Gold, Government Contracts Monograph No. 3, published by The George Washington University and Federal Publication, Inc. (1962). However, what law there is to be found among the decisions of this Court, bearing on the subject, would indicate that one delayed in the execution of a contract as the result of a default by the other contracting party would be entitled to recover damages thus sustained. Orange, Alexandria and Manassas R.R. Co. v. Placide, 35 Md. 315 at 321 (1872). Compare also the discussion regarding "unforseen conditions" in a construction contract in Linz v. Schuck, 106 Md. 220, 229, 67 A. 286 (1907). Also, the law would appear to save harmless the contractor who has followed the specifications in those situations where the specifications furnished by the owner prove defective or faulty. Dillon Properties, Inc. v. Minmar Builders, Inc., 257 Md. 274, 262 A.2d 740 (1970) and cases therein cited.
In view of what we have stated, we think the judgment of the lower court should be reversed and the case remanded, which remand would be merely for the purpose of determining whether there is any evidence to be offered in mitigation of damages. M. & R. Contractors and Builders, Inc. v. Michael, 215 Md. 340, 356, 138 A.2d 350 (1958).
Judgment reversed and case remanded, appellee to pay costs.