401 So.2d 422 (1981)
CITY OF BATON ROUGE and Parish of East Baton Rouge
v.
Pearl Price TULLIER et al.
No. 14129.
Court of Appeal of Louisiana, First Circuit.
May 26, 1981.
Rehearing Denied August 5, 1981.
*423 Walter G. Monsour, Jr., Parish Atty., Charles E. Pilcher, Asst. Parish Atty., Baton Rouge, for plaintiff-appellee City of Baton Rouge and Parish of East Baton Rouge.
Steve M. Marks, Baton Rouge, for defendants-appellants Pearl Price Tullier, et al.
Before ELLIS, COLE and WATKINS, JJ.
COLE, Judge.
The major issue in this expropriation case is how to divide the compensation awarded between the landowner and the tenant, where the tenant is also the expropriating authority. Two minor issues are also presented. The first is whether or not the trial court erred in accepting defendants' expert's appraisal of the subject property. The second is whether or not the defendants are entitled to attorney fees.
The facts giving rise to this litigation are as follows: In 1958 Benjamin Tullier and his wife, Pearl Price Tullier, as lessors, executed a lease of 10.02 acres of land fronting on Plank Road with lessee, Commercial Properties Development Corporation. The lease had a 25 year initial term with renewal options at 25 year intervals and was to end ultimately on October 31, 2057. The lessee was to pay $750.00 per month ($9,000 per year) and was specifically precluded from subordinating the landowner's interest for financing of improvements. The lease further provided at the termination of the lease all improvements would become the property of the landlord and the lessee was obligated to return the improvements in good repair. The lease also contained a condemnation clause which will be discussed in detail later.
*424 Commercial Properties built a Shopper's Fair and a Kroger store on the site. In 1963 Commercial assigned the lease to Tanson Enterprises, Inc. Because of changes in land use patterns the improvements were vacated sometime during the 1970s and the buildings stood deserted and vandalized. In 1979 the City of Baton Rouge and the Parish of East Baton Rouge (hereinafter referred to as the City-Parish) began negotiating with Tanson to acquire the lease. The City-Parish desired the site in order to house federally funded programs under the Comprehensive Employment Training Act (CETA) and the Equal Employment Opportunity Program (EEOP). The City-Parish paid Tanson $531,000 for the leasehold interest, including the existing structures which the City-Parish negotiator felt were worth approximately $500,000. After spending $3,446,780.34 to renovate the buildings, the City-Parish was informed the federal government would require it to have full title to the property before funding would be provided for the programs. The City-Parish's offer to the landowners of approximately $100,000 was refused. The City-Parish then filed suit to expropriate.[1] A partial summary judgment was rendered on the City-Parish's right to expropriate and a trial was held on July 18, 1980 to determine the proper award.
Testimony at trial consisted of appraisals by the various experts. Plaintiff's experts, Chester Driggers and Richard Bullard, appraised the land at values of $250,000 and $220,000 respectively. They used as their main comparable a tract of land "to the rear" of the subject tract, which had no frontage on Plank Road. Defendants' expert, John LeJeune, based his evaluation on two other comparables, each having frontage on Plank Road, and estimated the land to be worth $654,700.
Mr. Kermit Williams, another expert called by defendants, testified the improvements (as renovated by the City-Parish) were worth $4,623,000. His estimate of the land value essentially was the same as that given by Mr. LeJeune.
Plaintiff complains the trial court erred in accepting Mr. LeJeune's appraisal of land value. In its written reasons for judgment the trial court stated it was unimpressed with plaintiff's appraisers because of their heavy reliance on a "comparable" having no frontage on Plank Road. The court was impressed with the credentials of Mr. LeJeune, found his comparables to be more appropriate and therefore accepted his appraisal as being accurate. As always, the trial court is granted a great deal of discretion in assessing the probative value of evidence and since we find no manifest error, we decline to disturb his findings on this issue.
The trial court rendered judgment in favor of the City-Parish and against the Tulliers, granting the ownership of the property to the City-Parish. In written reasons for judgment the trial court determined the various values to be as follows:

Value of the land: $ 654,700.00
Value of the improvements: +4,623,000.00
 ______________
 Total due landowner: $ 5,277,700.00
Less lessee's loss of use
 of the improvements[2]: -4,616,990.10
 _______________
 Balance due landowners: $ 660,709.90

The trial court arrived at the figure representing the loss of use by the lessee by taking the present value of the improvements and subtracting the reversionary interest of the lessor, in the year 2057. (This *425 assumes all options to extend the lease would have been exercised by the City-Parish.) Using this method, the trial court applied a 9% discount rate and figured the present value of the right to receive $4,623,000 in 77 years is $4,623,000 multiplied by the inward co-efficient factor of .0013 which equals $4,616,990.10. Therefore, this amount was deducted from the total due the landowner and given as a credit to the City-Parish. The landowner was awarded the balance of $660,709.90.
Defendants appealed and plaintiff answered the appeal. Both parties argue the division of proceeds was not done according to the terms of article 17(d) of the lease. The pertinent parts of article 17 read as follows:
"(a) In the event the entire demised premises shall be appropriated or taken under the power of eminent domain by any public or quasi-public authority, this lease shall terminate and expire as of the date of such taking and the Tenant shall thereupon be released from any further liability hereunder.
. . . .
"(d) There shall be such division of the proceeds and awards such (sic) condemnation proceedings as shall be just and equitable under the circumstances. Although title to the improvements placed by Tenant upon demised premises will pass to the Landlord, nevertheless for purposes of condemnation, the fact that the Tenant made such improvements on the demised premises shall be taken into account, and the depriviation (sic) of the Tenant of the use of such improvements shall, pro tanto, be an item of damage in determining the amount of condemnation award to which the Tenant is entitled." (Emphasis added.)
There is much discussion in defendants' brief about the proper interpretation of article 17(d). We agree with defendants that the lease was apparently drafted for the usual situation in which the lessee and the expropriator are two different entities. However, we also agree with the trial court's assessment that even though the City-Parish occupies a dual role of lessee and expropriator, it cannot be denied any rights flowing from the lease agreement. These rights include compensation for damage due to deprivation of use of the premises caused by the expropriation. It is logical to compensate the City-Parish for being unable to use the premises, as lessee.
We find the trial court did not err in awarding the City-Parish, as lessee, a sum relative to the terminated use of the improvements. We differ, however, in that we do not find the sum awarded to be "just and equitable under the circumstances," as required by article 17(d) of the lease. The following figures are illustrative of this point.

Total award (credit) granted
 to lessee for loss of use: $4,616,990.10
Amount expended by City-Parish
 __to obtain leasehold interest:[3] 531,000.00
 __for improvements: 3,446,780.34
 _____________
Total Output: $3,977,780.34
 Credit granted: $4,616,990.10
 Less amount expended: -3,977,780.34
 _____________
Windfall to City-Parish: $ 639,209.76

We conclude it is equitable for the City-Parish to be reimbursed for all expenditures it made as lessee, but it is not entitled to make a "profit" from the expropriation proceeding. The landowner is contractually entitled to the total value of the land and improvements at the time of the taking, and the damage caused by the deprivation of use is necessarily sustained as of the same time. The "damage" to the lessee caused by the deprivation of use is the amount of the sums expended, not the value of ongoing of use of the property calculated over a period that might extend 77 years.
Several considerations weigh heavily in support of allowing the City-Parish credit *426 for only the sums expended by it as lessee. The logical interpretation of article 17(d) is that the City-Parish is entitled to damages for deprivation of use, i.e., the act of being deprived of use, not for the value of loss of actual use over a period of time. Also, the method used by the trial court to compute lessee's loss of use is of a highly speculative nature. It is difficult to assume the last two 25 year options of the lease would be exercised or that the discount rate used would be validated over such a long period of time (77 years). Such economic factors are obviously subject to instability.
A final, overriding consideration supporting an increased award to the defendants is the lack of affirmative evidence regarding the value of deprivation of use of the improvements, or of any other damage suffered by the City-Parish, as lessee, caused by condemnation. The burden to produce such evidence was imposed upon the City-Parish by the condemnation clause in the lease and none was offered by it. To the contrary, the defendants offered extensive evidence to show the residual values due them. Both of their appraisers testified at length as regards the value of the land and the value of improvements which they considered inured to the benefit of defendants. Although we do not agree with all facets of reasoning used by defendants' appraisers, or with their bottom line figures, we do find that logic employed more closely results in a "just and equitable" division of the proceeds from the condemnation than does the invocation of the formula used by the trial court. Parenthetically, Mr. Williams felt the defendants were entitled to a total award of $2,150,450 and Mr. LeJeune felt the award should be $2,000,000, or at the very least, $1,544,400.
Accordingly, we decrease the "credit" given to the City-Parish by $639,209.76[4] and increase the award to the defendants-landowners by this same amount. This results in a modification of the judgment insofar as it grants the landowners the total sum of $660,709.90, by adding to that amount the sum of $639,209.76, making a total award of $1,299,919.66.
The last issue to be considered is whether or not defendants are entitled to reasonable attorney fees. La. R.S. 19:109 deals specifically with expropriation by municipal corporations and reads in pertinent part as follows:
"... If the trial judge decides in favor of the expropriating authority, then within thirty days after such decision, a jury shall be impaneled to determine the measure of compensation. Immediately after compensation has been determined, the plaintiff shall, upon motion of the defendant, present evidence as to the highest amount it offered the defendant for the property prior to trial on the merits. After hearing evidence on the issue, the court shall determine the highest amount offered. If the highest amount offered is less than the compensation awarded, the court may award reasonable attorney fees."
Defendants' attorney prayed for attorney fees in his answer to plaintiff's petition. Judgment was signed on September 26, 1980, a motion for appeal was filed by defendant the same day and a motion for attorney fees was filed September 29, 1980. The trial court apparently declined jurisdiction over the matter since the motion for appeal had already been signed. La. Code Civ. P. art. 2088. The issue presented here is whether or not this court can award attorney fees based on the record, even though there has been no contradictory hearing on the matter.
Our brethren in the Second Circuit were recently faced with a similar issue. In Claiborne Elec. Cooperative, Inc. v. Garrett, 357 So.2d 1251 (La.App. 2d Cir. 1978), writ refused 1978, the defendants in an expropriation case sought to have the amount of attorney fees increased on appeal. Plaintiff contended defendants were not entitled to any attorney fees because compensation *427 had been determined by a judge rather than a jury[5] and because there had been no trial on a contradictory motion.
The Second Circuit noted (as is the situation in the present case) the defendants had petitioned for reasonable attorney fees but did not request a jury trial on issues of compensation. It held since the district judge was aware of the disparity between the amount offered by plaintiff and the compensation awarded, a trial of the contradictory motion would have been a useless exercise. The court stated:
"We hold defendant landowners are entitled to reasonable attorney fees in any case in which the highest amount offered is less than that obtained through the landowners' judicial assertion of their rights. This interpretation of the statute does not do violence to its language."
We therefore conclude defendants are entitled to reasonable attorney fees. The petition of the expropriating authority clearly stated the landowners had been offered approximately $100,000. The trial court awarded a total of $660,709.90, which we have increased to $1,299,919.66. In light of this great disparity, the defendants should be awarded reasonable attorney fees. Considering the complexity of the issues involved, the preparation, briefs and trial time, an award of $20,000 for attorney fees is appropriate. To avoid a remand, thereby conserving judicial time, we further modify the judgment appealed to make the award. La. Code Civ. P. art. 2164.
For the foregoing reasons, the judgment of the trial court is amended to increase the award to defendants from $660,709.90 to $1,299,919.66, and to cast the plaintiff for attorney fees in the additional sum of $20,000. In all other respects the judgment of the trial court is affirmed.
Plaintiff is cast for costs, as provided by law.
AMENDED AND, AS AMENDED, AFFIRMED.
WATKINS, J., concurs and assigns reasons.
WATKINS, Judge (concurring).
The trial court correctly states the governing legal principle to be that "The City-Parish may not benefit nor be denied any legitimate rights merely because it is both lessee and expropriating authority." We must, therefore, consider the benefits due the City-Parish as lessee under Article 17(d) of the 1958 lease instrument without consideration that it is a public body with expropriating authority.
The trial court found the City-Parish entitled to a portion of the award based on the "value of its loss of use (as tenant presumably) of the improvements," under Article 17(d). I do not believe that the City-Parish as lessee sustained any damage due to deprivation of use of the improvements by the taking, for the reason that but for the expropriation it would not be able to obtain the funds to operate the programs for which it declares the improvements are to be used. In addition the City-Parish neither alleged nor offered proof of any damages as lessee. Nor is there anything in the record to even indicate that the City-Parish could have used the improvements for some other purpose.
If we assume arguendo that the City-Parish is entitled to damages for deprivation of use, the effect of the trial court's method of arriving at the value of the loss of use is to award the landowners only the sum of $6,009.90 for the value of the improvements at the termination of lease, notwithstanding the requirement of the lease that the lessee maintain the improvements in a good state of repair. Clearly this amount is grossly inadequate.
I believe a better way to accomplish a "just and equitable" division of the proceeds would be to follow the method dictated by Article 17(d) and thus to hold the City-Parish is entitled to credit for only those sums actually expended by it in obtaining the improvements, the quoted language *428 in Article 17(d) being directly pertinent:
"Although title to the improvements placed by Tenant upon demised premises will pass to the landlord, nevertheless for purposes of condemnation, the fact that the Tenant made such improvements on the demised premises shall be taken into account...." (emphasis ours)
I, therefore, concur in the majority opinion.
NOTES
[1] The following persons were named as defendants: Pearl Price Tullier, Leola Tullier Davis, A. J. Tullier, Jr., James Joseph Tullier, Sr., Elliott J. Tullier, Sr., Juanita Martin, Herman C. Tullier, Sr., Clarence J. Tullier, John Hilary Tullier, Ruby Tullier Hartley, Leroy Tullier, Evelyn McGowan, Brenda Bankston Kraemer, Roxanne Bankston Allen, Benjamin J. Tullier, Jr., Corinne Tullier Landry, Gerald J. Tullier, Warren J. Tullier.
[2] According to the trial judge, this figure was calculated using a concept advanced by Mr. LeJeune in his appraisal report and a co-efficient factor set forth in a textbook on real estate appraisal which was cited by Mr. LeJeune. While the report and an excerpt from the textbook are in evidence, we have been unable to locate and verify the referenced basis for the calculation.
[3] It is significant that of the amount paid by the City-Parish for the leasehold interest, nearly all of it represented the value of the old structures which, through renovations, resulted in new improvements valued at $4,623,000. In effect, the new improvements cost the City-Parish nearly four million dollars.
[4] Instead of receiving a credit of $4,616,990.10 the City-Parish now receives a credit of $3,977,780.34.
[5] The applicable statute in Claiborne was La. R.S. 19:8, which deals with general expropriation cases and contains the identical language concerning the attorney fees as 19:109.