594 A.2d 138

**STATE of Maryland, DEPARTMENT OF ECONOMIC
AND COMMUNITY DEVELOPMENT**

v.

**ATTMAN/GLAZER P.B. COMPANY.**

**No. 130, Sept. Term, 1990.**

Court of Appeals of Maryland.

Per Curiam Order May 13, 1991.

Opinion Aug. 26, 1991.

Evelyn O. Cannon, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Lucy Cardwell, Asst. Atty. Gen., Douglas N. Silber, Asst. Atty. Gen., on brief), Baltimore, for petitioner/cross-respondent.

Kurt J. Fischer (Francis B. Burch, Jr., Robert J. Mathias, Thomas P. Lloyd, Piper & Marbury, on brief), Baltimore, for respondent/cross-petitioner.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW and KARWACKI, JJ.

### ORDER

PER CURIAM.

For reasons to be stated in an opinion later to be filed, it is this *13th* day of May, 1991

ORDERED, by the Court of Appeals of Maryland, a majority of the Court concurring, that that part of the judgment of the Circuit Court for Anne Arundel County ordering that appellee, Attman/Glazer P.B. Company, perform its agreements: (1) to admit the public necessity for and valid public purpose of the condemnation action entitled *State of Maryland v. Attman/Glazer P.B. Company,* Case No. 1121327, and (2) to accept the sum of seven million five hundred eighty-three thousand three hundred thirty-three dollars and thirty-three cents ($7,583,333.33) as the fair market value of the property condemned is affirmed, and it is further

ORDERED that that part of the judgment of the Circuit Court for Anne Arundel County which directs the appellant to continue to pay rent for the property which is the subject of these proceedings until payment by the State of Maryland of the award in the condemnation action referred to above in accordance with that court's previously entered orders is affirmed, and it is further

ORDERED that that part of the judgment of the Circuit Court for Anne Arundel County which declares that the appellant is entitled to set off against the additional rent due under the lease between the parties (resulting from the conversion of storage areas in the property to office use) the appellant's cost of making the conversion is reversed, and it is further

ORDERED that the case shall be remanded to the Circuit Court for Anne Arundel County for further proceedings on the appellant's claim for damages occasioned by the delay

■■■■■■■■
■■■■

caused by appellee's failure to perform its agreements relating to the condemnation action entitled *State of Maryland v. Attman/Glazer P.B. Company.*

Costs to be paid, two-thirds by the appellee and one-third by the appellant.

Mandate to issue forthwith.

## OPINION

KARWACKI, Judge.

On May 21, 1981, Attman/Glazer P.B. Company (AG), a limited partnership, leased an office building which it was to construct on land to be known as 45 Calvert Street in Annapolis to the State of Maryland for use of the Department of Economic and Community Development (DECD). The lease was restated by the parties with slight modifications on February 4, 1982. The original term of the lease was for five years, but the State was given the option to renew the lease for two additional terms of five years each. The building was completed, and by amendment to the lease, the parties agreed that the original term of the lease would commence on October 29, 1983.

The rent for the leased premises was based upon the building's net usable office space and net usable storage space.[1] After completion of the building, it was determined that it contained 75,000 square feet of net usable office

---

1. Paragraph 14 of the restated lease of February 4, 1982, provided in pertinent part:

"The rent for the Premises will be based upon the following schedule showing rent per net usable square foot:

|  | Office Space | Storage Space |
| --- | --- | --- |
| Initial | $ 9.50 per square foot | $3.50 per square foot |
| First Renewal Term | $10.50 per square foot | $4.00 per square foot |
| Second Renewal Term | $11.50 per square foot | $4.50 per square foot |

space and 10,000 square feet of net usable storage space. The State paid rent based upon this determination from the commencement of the lease term on October 29, 1983.

Under the lease, the State, as lessee, only had the right to make improvements to the premises with the prior written consent of AG.[2] On May 2, 1985, Mr. John Juba of DECD wrote AG, requesting permission to convert a portion of the basement of the building from storage to office use. Mr. Lowell R. Glazer, a general partner of AG, replied by letter of May 7, 1985, stating:

"Dear Mr. Juba:

I received your request of May 2 for additional office space and conference room in the basement at 45 Calvert Street. You have my permission to proceed.

I must remind you that we are still in the final stages of obtaining our occupancy permit and you might experience difficulty in obtaining permits and approval from the City of Annapolis.

You can be assured that you will have our full cooperation.

I am forwarding a copy of this letter and your specifications to Steve Harris so that we might help you coordinate your work with the City.

---

It is understood and agreed that the total rents and net usable square footage quoted in this Lease are approximate. However, it is further understood and agreed that if the Premises are completed substantially in accordance with the Plans and Specifications, the Premises, upon completion, should contain (a) not fewer than 77,000 net usable square feet of office space. . . .

Upon completion of the Premises, the lessor and Lessee shall by mutual agreement determine the exact net usable square footage of the Premises."

**2.** Paragraph Six of the Restated Lease of February 4, 1982 provides:

"*SIX:* The lessee shall not make any alterations, additions, or improvements to the Premises without the Lessor's prior written consent, and all alterations, additions or improvements made by either of the parties hereto upon the Premises shall be the property of the Lessor and shall remain upon and be surrendered with the Premises at the termination of this lease."

I will also have to review the area being remodeled to see what classification it is on the original basement allocation of rent. If some of the storage area is now being converted to office space, it will have to be reflected in the rent.

If you need any additional information, please do not hesitate to contact me."

Over the next three years the improvements were completed at a cost to the State in excess of $165,000. Attman/Glazer Building Co., which is owned by the general partners of AG, was the general contractor for this conversion of 8,000 square feet of storage space to office space.

The State continued to pay rent based on the original allocation of office and storage space for the next four years. AG never made any demand for increased rent which Mr. Glazer had referred to in his letter approving the conversion of space in the basement of the building. At trial, he explained that AG was silent on the issue of increased rent because "we had what we felt was a ... good tenant in a building on a long-term lease."

On March 9, 1988, the State notified AG that it was exercising its option to renew the lease for an additional five year term. On May 2, 1988, the State sent AG a copy of the agenda item of the Board of Public Works approving that renewal. That agenda item noted that the State would continue to pay rent for 75,000 square feet of office space and 10,000 square feet of storage space.

In its Budget Bill for fiscal year 1990, which became effective on July 1, 1989, the General Assembly appropriated funds for the State's acquisition of the building it was leasing from AG at 45 Calvert Street in Annapolis. That acquisition had been contemplated by the State and AG since the inception of the State's tenancy. Paragraph 22 of the lease provided:

"The Lessee has advised the Lessor that it anticipates that it may effect the condemnation of the Premises and all of the land appurtenant thereto (comprising approxi-

mately .946 acres) during the term of this Lease or any renewal term thereof. In the event that the property is condemned by the Lessee (or any agency or instrumentality of the Lessee) during the term of this Lease or any renewal thereof, and if such Petition for Condemnation contains an offer based on the average of three appraisals obtained as specified below, net of all costs incident to the condemnation proceedings and transfer of title for the property anticipated to be condemned, the Lessor agrees, intending to be absolutely bound hereby (i) to admit the public necessity for and valid public purpose of such condemnation and (ii) to accept the sum based on the average of the three appraisals for its interest in the property. The Lessor and the Lessee agree that the foregoing agreements of the Lessor shall be null, void and of no effect whatsoever (and shall not be admitted into evidence in any condemnation proceeding) unless the Lessee offers the sum based on the average of the three appraisals for the property in a Condemnation Petition filed during the term of this Lease or any renewal thereof."

It was undisputed at trial that this method of acquisition was chosen over a purchase option in the lease in part because of objections which the City of Annapolis had to the development of a building at the site of 45 Calvert Street by AG which might be offered for sale to a public agency, thereby removing that real estate from its assessable tax base. (The building site was located in an urban renewal area over which the City of Annapolis possessed development control.)[3] It was also undisputed that the condemnation mode of acquisition by the State was preferred by the partners of AG because they would receive more beneficial federal and state income tax treatment from such an acquisition than from a sale of the property.

---

**3.** In *Attman v. Mayor*, 314 Md. 675, 552 A.2d 1277 (1989), we dealt with a dispute which had arisen between AG and the City of Annapolis in relation to conditions which the City had placed upon AG's development of 45 Calvert Street.

AG had followed the State budget process and was aware in December of 1988 of the distinct possibility that the State would condemn its interest in the property. On March 28, 1989, Mr. Glazer wrote to the State demanding increased rent for the 8,000 square feet of basement area in the building which had been converted from storage to office space. He proposed that the increase would be effective with the first monthly installment of rent due by the State in November of 1988 by virtue of the renewal of the lease effective on October 29, 1988. In June, 1989, AG retained a real estate appraiser, M. Ronald Lipman, to evaluate the value of its interest in 45 Calvert Street.

As AG expected, on July 6, 1989, the State notified AG that it was initiating steps for its possible condemnation of the property pursuant to Paragraph 22 of the Lease.[4] Also, on July 11, 1989, it replied to Mr. Glazer's letter of March 28, 1989, stating:

"Our records indicate that the State has paid all costs connected with the conversion of storage space to other uses. Therefore, we do not believe you have any cause to change the rent as stated in the original lease document."

---

**4.** Paragraph 22 of the lease specified those steps:
"The appraisers shall be selected and the value of the property determined as follows:
(a) The Lessee shall notify the Lessor of its intent to enter condemnation proceedings.
(b) The Lessor and the Lessee shall each select an appraiser within 30 days of the time the notice is received by the Lessor.
(c) The two selected appraisers shall select a third appraiser within 15 days thereafter.
(d) The appraisers shall submit their appraisals to the Department of General Services within 45 days of the time all three appraisers have been selected. Such appraisals shall not include the fit-up items for which the Lessor shall have been reimbursed under Paragraph Thirteen.
(e) The Department of General Services shall be permitted 60 days from the receipt of all appraisals to review the appraisals and an additional 20 days to file its petition for condemnation.
(f) The Lessee shall pay for the fee of the appraiser selected by the Lessee; the Lessor shall pay for the fee of the appraiser selected by the Lessor; and the parties shall equally share the payment of the fee of the appraiser selected by the other two appraisers."

Consistent with Paragraph 22 of the lease, the State and AG named experts to appraise 45 Calvert Street. The State selected Donald Urquhart, and AG named M. Ronald Lipman. Urquhart and Lipman jointly selected Mr. Philip Klein to serve as the third appraiser. Before any of the appraisals had been completed, an attorney representing AG wrote to the appraisers, requesting that each compute alternative valuations of the property: one based its value after deducting the leasehold interest of the State and the other disregarding the existence of the lease. Each of the appraisers complied. The average of the three appraisals which took the State's leasehold interest into account was $7,583,333; the average appraisal value disregarding the lease was $9,550,000.

While the appraisals were being formulated, Mr. Glazer wrote to the State on October 19, 1989, again demanding increased rent for the 8,000 square feet of basement area that had been converted from storage use to office space from October 29, 1988, until the State acquired the leased premises by condemnation. That letter concluded:

"Pursuant to Paragraph 27 of the Lease Agreement, this letter will constitute written notice of the default by the State. If the State has not cured this default within 45 days, we will be forced to terminate the lease and take possession of the premises.

If you have any questions with regard to this matter, please do not hesitate to contact me."

Responding on November 27, 1989, the State's representative wrote:

"Our office has reviewed your request for additional rent monies concerning storage space that was converted to office use. As we have previously explained, we do not feel obligated in any way to adjust the rent since all conversion was done at the State's expense. We do not believe that we are in default of the lease agreement as you have stated in your letter.

However, in order to fully protect our interests, if you do not rescind your demand for rent by the end of the

week, the State will file a declaratory judgment action in order to ensure that our full interests under the lease are protected."

On December 4, 1989, the State filed a Complaint for Declaratory and Equitable Relief in the Circuit Court for Anne Arundel County (Civil Action No. 3113812). It sought a declaration that (1) AG had waived any right it may have had to declare the State in default on the lease for not paying higher rent on the space which had been converted from storage to office use; (2) if AG had not waived the right to higher rent for the converted space, the State was entitled to credit for the cost of converting the space; and (3) the State was not in default on the lease because the cost of converting the space exceeded the alleged rent due. It also asked for an order enjoining AG from commencing any eviction proceeding to regain possession of 45 Calvert Street and for any other and further relief to which it might be entitled. AG filed an answer to the complaint. Neither party requested a jury trial.

On January 19, 1990, the State filed a petition in the same court (Civil Action No. 1121327) to condemn AG's interest in 45 Calvert Street. On February 16, 1990, the State amended that petition to offer $7,583,333 for AG's interest, net of all costs incident to the condemnation proceedings and transfer of title for the property. In its answer to the amended petition for condemnation, AG refused to admit that the condemnation was for a valid public purpose and denied that the amount offered was proper. Thereafter, the State amended its action for declaratory and equitable relief by adding a Count II in which it sought specific performance by AG of its obligations under Paragraph 22 of the lease. AG answered the amended complaint and demanded a trial by jury. On the State's motion, AG's jury trial demand was stricken.

After a bench trial, the court ordered:

(1) that AG was compelled to admit the public necessity for and valid public purpose of the action to condemn

AG's interest in 45 Calvert Street and to accept the sum of $7,583,333 for that interest;

(2) that State should pay AG increased rent from November 1988 forward associated with the conversion of the space in the basement of the leased premise from storage to office use until the State remits payment to AG of the award in the pending condemnation action; and

(3) State should set off against the additional rent that amount which it expended in the conversion of the basement space.

The court stayed further proceedings in the condemnation action pending appellate review of its judgment in the instant case.

Both parties appealed to the Court of Special Appeals. Thereafter, we granted both parties' petitions for a writ of certiorari prior to consideration of the case by the intermediate appellate court.

In its appeal the State presents these questions:

"1. Does the State's obligation to pay rent terminate after the State exercises an option to purchase through the initiation of a condemnation proceeding?

2. May a circuit court order the State to pay rent when no funds have been appropriated for that purpose?"

AG in its cross-appeal raises these issues:

"1. Did the circuit court err by interpreting Paragraph 22 of the Lease Agreement between the State and Attman/Glazer to require that the State's below-market leasehold interest rate be considered in determining the compensation due to Attman/Glazer upon the State's acquisition of the building?

2. Did the circuit court err by striking Attman/Glazer's Demand for Jury Trial when Attman/Glazer's demand was made within 15 days of filing the Answer to the Amended Complaint?

3. Did the circuit court err by ruling that increased rent to which Attman/Glazer was entitled under Paragraph 14 of the Lease Agreement must be offset by the

State's cost of making improvements when the lease expressly provided for increased rent, but did not provide for an offset?"

We will address the questions presented by AG in its cross-appeal before turning our attention to the issues raised by the State's appeal.

## I.

█ Paragraph 22 of the lease contains the agreement of the parties as to the compensation due AG in the event that the State opted to exercise its absolute right of eminent domain over AG's interest in the property during the original term of the lease or during any renewal term. As we noted earlier, this agreement was entered deliberately because the City of Annapolis had conditioned AG's right to develop 45 Calvert Street on AG's promise that it would not sell the property to a public agency and on AG's desire to gain preferential income tax treatment for its partners on any acquisition of the property by the State. AG argues that Paragraph 22 is ambiguous as to the compensation due AG in any condemnation by the State. It posits, therefore, that the trial court improperly excluded parol evidence as to the subjective intent of the parties when they entered the agreement. We disagree and explain.

█ We have long adhered to the law of objective interpretation of contracts. *Cloverland Dairy Farms, Inc. v. Fry*, 322 Md. 367, 373, 587 A.2d 527, 530 (1991); *Feick v. Thrutchly*, 322 Md. 111, 114, 586 A.2d 3, 4 (1991); *General Motors Acceptance Corp. v. Daniels*, 303 Md. 254, 261, 492 A.2d 1306, 1310 (1985); *Orkin v. Jacobson*, 274 Md. 124, 128, 332 A.2d 901, 903 (1975); *Kasten Constr. v. Rod Enterprises*, 268 Md. 318, 329, 301 A.2d 12, 18 (1973). Thus, in interpreting a contract the court must

"determine from the language of the agreement itself what a reasonable person in the position of the parties would have meant at the time it was effectuated. In addition, when the language of the contract is plain and unambiguous there is no room for construction, and a

court must presume that the parties meant what they expressed. In these circumstances, the true test of what is meant is not what the parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant. Consequently, the clear and unambiguous language of an agreement will not give away to what the parties thought that the agreement meant or intended it to mean."

*General Motors Acceptance Corp. v. Daniels*, 303 Md. at 261, 492 A.2d at 1310. The test of ambiguity is whether, considering "the character of the contract, its purpose, and the facts and circumstances of the parties at the time of execution," *Pacific Indem. Co. v. Interstate Fire & Cas. Co.*, 302 Md. 383, 388, 488 A.2d 486, 488 (1985), the language used in the contract, when read by a reasonably prudent person, is susceptible of more than one meaning. *Heat & Power v. Air Products*, 320 Md. 584, 596, 578 A.2d 1202, 1208 (1990). Applying that test, we perceive no ambiguity in Paragraph 22 of the lease.

At the time of execution of the lease, the parties were entering upon a landlord-tenant relationship which could extend for a 15 year period but which both were aware would probably be shorter since the State anticipated exercising its absolute right to condemn its landlord's interest in the leased premises. The sophisticated and well-represented landlord and tenant obviously wished to avoid the uncertainty, delay and expense incident to a contested condemnation proceeding and hence the *raison d'etre* for Paragraph 22; they agreed in advance to a method of valuating AG's interest in the premises should that interest be condemned by the State during the tenancy which was created by the lease. During that tenancy, AG's interest in the property consisted of a fee simple estate which was encumbered by the lease. That was the interest which was subject to the State's acquisition through its power of eminent domain. *See, Heritage Realty Inc. v. City of Baltimore*, 252 Md. 1, 11, 248 A.2d 898, 904–05 (1969); *cf. City of Baton Rouge v. Tallier*, 401 So.2d 422 (La.App.1981); *County of Los Ange-*

*les v. American Savings & Loan Ass'n*, 26 Cal.App.3d 7, 102 Cal.Rptr. 439 (1972). In valuing that encumbered fee simple interest in a condemnation proceeding "the value of the unencumbered fee is determined and value of the leasehold deducted therefrom." 4 Nichols' *The Law of Eminent Domain*, § 12D.04[2] at 12D-41 (3rd ed. 1990). Consequently, the court did not err when it considered the language of Paragraph 22 of the lease objectively and concluded that when AG agreed "to be absolutely bound ... to accept the sum based on the average of the three appraisals for its interest in the property," that interest was a reversionary interest and not a fee simple absolute interest in 45 Calvert Street and was to be valued as such.

## II.

AG asserts that the court erroneously struck the demand for jury trial which accompanied its answer to the amended complaint in the instant case. Neither party had demanded a jury trial when the original complaint and answer were filed five months earlier.

Maryland Rule 2–325 provides in pertinent part:

"(a) **Demand.**—Any party may elect a trial by jury of any issue triable of right by a jury by filing a demand therefor in writing either as a separate paper or separately titled at the conclusion of a pleading and immediately preceding any required certificate of service.

(b) **Waiver.**—The failure of a party to file the demand within 15 days after service of the last pleading filed by any party directed to the issue constitutes a waiver of trial by jury.

. . . . .

(e) **Effect of Election.**—When trial by jury has been elected by any party, the action, including all claims whether asserted by way of counterclaim, cross-claim or third-party claim, as to all parties, and as to all issues triable of right by a jury, shall be designated upon the docket as a jury trial."

Under this rule a party is entitled to demand a jury trial on an issue triable of right by a jury where that issue is raised in an amended pleading filed after a jury trial waiver has occurred with regard to earlier pleadings in the case. P. Neimeyer and L. Richards, *Maryland Rules Commentary,* (1984, 1988 Supp.) p. 160.

Although either party in the instant case might have been entitled to a jury trial on the legal issues generated in the State's original complaint seeking a declaratory judgment and AG's answer, Md.Code (1974, 1984 Repl.Vol.) § 3–404 of the Courts and Judicial Proceedings Article; *Higgins v. Barnes,* 310 Md. 532, 540–552, 530 A.2d 724, 728–734 (1989); *Owens–Illinois Inc. v. Lake Shore Land Co., Inc.,* 610 F.2d 1185, 1189 (3rd Cir.1979); 6 C. Wright & A. Miller, *Federal Practice and Procedure,* § 2313; F. James, Jr. and G. Hazard, Jr., *Civil Procedure,* § 8.10 at 383–84, both waived that right under Md. Rule 2–325(b). Thus, AG's entitlement to the jury trial it demanded depended upon whether the State's amended complaint raised an issue "triable of right by a jury."

■ The sole issue raised by the State's amended complaint was whether it was entitled to specific performance of the promises which AG had made in Paragraph 22 of the lease. Patently, such an action, seeking specific performance of a contract, is one which invokes the equity jurisdiction of the court, *Higgins v. Barnes,* 310 Md. at 551, 530 A.2d at 733, where neither party is entitled to a trial by jury. *Attorney Grievance Commission v. Kerpelman,* 288 Md. 341, 355–56, 420 A.2d 940, 947–48 (1980), *cert. denied,* 450 U.S. 970, 101 S.Ct. 1492, 67 L.Ed.2d 621 (1981). Consequently, the court properly ruled that AG was not entitled to a trial by jury after the State filed its amended complaint.

### III.

■ In seeking a declaratory judgment as to its liability for increased rent under the lease because of its conversion

of 8,000 sq. ft. of basement space from storage to office use, the State asserted alternative defenses to AG's claim for increased rent and claimed a set off against any amount which the court might determine that it owed in additional rent. The court ruled that the State owed additional rent because of the basement conversion but that any claim for increased rent prior to the renewal of the lease on October 29, 1988, had been waived by AG. AG has not appealed that ruling on waiver. As to the State's set off claim, the court ruled that the State was entitled to a credit against the additional rent for the money it spent in converting the basement space from storage to office use. AG challenges that decision.

Pursuant to paragraph six of the lease the State had the right to make improvements to the leased premises at its own expense with the consent of AG. That paragraph further provided that any such improvements would become the property of AG. The provisions of Paragraph 14 of the lease are equally clear that the rent owed by the State at the inception of the original lease term was subject to modification depending upon the usable office and storage space within the premises at any time during the continuance of the tenancy. Notwithstanding this plain language, the court concluded that it would be unfair for AG to realize the value of these improvements as part of the condemnation award when the improvements were paid for by the State. In so concluding, the court ignored the plain language of the lease and violated well-settled contract law.

In *West v. Flanagan*, 4 Md. 36 (1853), the parties entered into a lease which expressly provided that its term was from year to year. The lessee made substantial improvements to the leased premises at his expense. When lessor gave notice to the lessee to quit the premises at year end, lessee sued to enjoin the termination of the tenancy. Lessee argued that it would be unjust to permit the tenancy to be terminated because lessor knew that he was making improvements at considerable expense upon expectation that "he would be permitted to use them, so long as they

were fit to use." We reversed the issuance of an injunction preventing termination of the lease, reasoning:

> "The defendant [lessor] on the one hand relies upon the *express* contract between himself and the complainant [lessee], that the latter should hold and enjoy the property as tenant from year to year, as the rule by which their respective rights, in the present transaction are to be governed; while the complainant sets up an implied agreement or license creating rights wholly inconsistent with those existing under the express contract or lease....
>
> As a general rule implied contracts are only sustained in order to supply the place of express agreements, and we know of no case where the latter have been made to yield to the former unless by the express or implied understanding of the parties that such should be the result. Indeed an express agreement, admitted to be, as this one is, in full force, negatives an implied, inconsistent agreement, relating to the same subject matter."

*Id.* 4 Md. at 56.

Since that early case, we have repeatedly held that it is improper for the court to rewrite the terms of a contract for the parties where the terms of the contract are clear and unambiguous. *e.g. Canaras v. Lift Truck Servs. Inc.,* 272 Md. 337, 350, 322 A.2d 866, 873 (1974); *Katz v. Williams,* 239 Md. 355, 361, 211 A.2d 723, 726–27 (1964).

In concluding that the State was entitled to offset the cost of converting the basement space from the amount it owed in additional rent, the court inappropriately relied on *Kimmel v. W.T. Grant Co.,* 233 Md. 466, 197 A.2d 122 (1964). In that case the lease gave the tenant the right to occupy only the first floor of the leased premises in return for a specified rent, but provided that, if the tenant desired to use space in the basement of the building, it could notify the landlord who was required to improve the basement area for tenant's use. If the tenant exercised that option, the lease required that additional rent be paid. The tenant paid for improvements to the basement and then occupied

that space. We held that the tenant was entitled to set off the improvement costs from the increased rent owed because the lease expressly provided that the landlord would pay the costs of improving the basement. In the instant case, AG was not obligated under the lease to pay for the cost of converting the basement area of the premises from storage to office use.

Although the court erred in allowing the set off in the amount of the cost of the conversion of basement space, the State may be entitled under its prayer for general relief to a set off based upon damages resulting from the delay in AG's performance of its duties under Paragraph 22 of the lease. *Cf. Dewey Jordan v. Md. Nat'l Cap. P & P*, 258 Md. 490, 500, 265 A.2d 892, 897 (1970); *Hammaker v. Schleigh*, 157 Md. 652, 668, 147 A. 790, 796 (1929). We shall remand the case for a determination of that issue.

## IV.

■ The State argues that it was not liable for any further rent under the lease after it offered $7,583,333 for AG's interest in 45 Calvert Street in the amended petition for condemnation which it filed in Civil Action No. 1121327 on February 16, 1990. It asserts that when it made this offer in compliance with Paragraph 22 of the lease that it was exercising an option to purchase granted it under that paragraph. Consequently, it posits, AG, as lessor, was not entitled to rent after the valid exercise of an option to purchase the leased premises by the State, as lessee, citing *Hanna v. Bauguess*, 49 Md.App. 87, 96–97, 430 A.2d 104, 109 (1981); *Young v. Cities Service*, 33 Md.App. 315, 321, 364 A.2d 603, 607 (1976); *United States v. Bethlehem Steel Co.*, 215 F.Supp. 62, 70 (D.Md.1962) *aff'd* 323 F.2d 655 (4th Cir.1963); *American Law of Property*, § 3.84 (1952 ed.). This argument proceeds on a faulty premise.

■ We pointed out in Part I of this opinion that Paragraph 22 of the lease was purposely structured by the parties to provide that condemnation rather then purchase

should be the method by which the State could acquire 45 Calvert Street during the term of its leasehold estate. Unlike the exercise of an option to purchase by a lessee, the filing of a condemnation action by a lessee gives it no equitable title to the interest of the lessor being condemned. *Washington Suburban Sanitary Comm'r v. Nash,* 284 Md. 376, 381, 396 A.2d 538, 540–41 (1979). Rather, no title passes to the condemnor until payment of the award and the costs of the proceeding by the condemnor. Md.Code (1974, 1988 Repl.Vol.) § 12–108 of the Real Property Article. Accordingly, the State remains liable for rent under the lease until it pays the award and costs in the pending action to condemn 45 Calvert Street.

## V.

Finally, the State contends that the court had no power to order it to pay rent since no money had been appropriated by the General Assembly for that purpose. We find no merit in that contention.

Paragraph one of the lease provides:

"Lessee covenants to pay the said specified rent at the time and in the manner above provided, which rent shall be paid out of funds appropriated therefore by the General Assembly and Federal Government. In the event such funds are not appropriated the Lessee shall have the unrestricted right to terminate this lease upon 90 days prior written notice or upon the effective date of the termination of funds, whichever shall first occur."

Under that provision the State could have vacated the leased premises at any time without further liability for rent if no funds were appropriated for that purpose. When, however, the State elected to continue to occupy the premises, it was required by the 14th Amendment to the United States Constitution and Article III, § 40 of the Maryland Constitution to pay the fair rental value of the property. *Loretto v. Teleprompter Manhattan CATV Corp.,* 458 U.S. 419, 434–35, 102 S.Ct. 3164, 3175–76, 73 L.Ed.2d 868, 881–82

(1982); *United States v. General Motors Corp.,* 323 U.S. 373, 382, 65 S.Ct. 357, 361, 89 L.Ed. 311, 320–21 (1945); 2 Nichols' *The Law of Eminent Domain,* § 6.02 at 6–22 (3rd ed. 1990). Accordingly, the court properly declared that, if the State was to continue to occupy AG's property until its acquisition in the condemnation proceeding, it must continue to pay rent.