**FEDERAL LEASING, INC.**

v.

**AMPERIF CORP.**

Civ. No. S 87–2435.

United States District Court,
D. Maryland.

Nov. 23, 1993.

Stewart G. Webb, Jr., James A. Dunbar, Mitchell Y. Mirviss, Venable, Baetjer & Howard, Baltimore, MD, for plaintiff.

Michael R. Matthias, Matthias & Berg, Los Angeles, CA, Leo A. Hughes, Jr., Catonsville, MD, for defendant.

### MEMORANDUM OPINION

SMALKIN, District Judge.

This matter is before the Court on cross-motions for summary judgment as to both the Plaintiff's claim and as to the Defendant's counterclaim. The motions have been duly briefed, and no oral argument is deemed necessary. Local Rule 105.6. (D.Md.).

### I. Factual Background

Plaintiff and Counter–Defendant, Federal Leasing, Inc. ("Federal") brokers Government contracts. In essence, Federal buys contract rights from a Government contractor and assigns the rights to a bank. Defendant and Counter–Plaintiff, Amperif Corporation ("Amperif"), manufactures and assembles computer memory devices. Federal and Amperif entered into a purchase agreement whereby Federal would purchase rights and monies due under various contracts made between Amperif and the Government. The purchase agreement did not specify the particular contracts but rather provided the general terms and conditions governing the Amperif/Federal relationship. Under the purchase agreement, the specific contracts were conveyed from Amperif to Federal through

delivery orders. The delivery orders specifically referenced and incorporated the terms and conditions of the purchase agreement.

During the course of the Amperif/Federal relationship, the two contracts that are at issue in this case were conveyed by Amperif to Federal through delivery orders. The first contract, the Naval Weapons Center ("NWC") Contract, is the subject of Federal's claim against Amperif. The second contract, the "1978 Contract," is the basis of the Amperif claim against Federal. The specific obligations between Amperif and the Government pursuant to these contracts are not at issue in this case and, therefore, need no indepth discussion.

Highly relevant to this action, however, is the fact that Federal subsequently assigned its rights under these two contracts to a third party, First National Bank of Missoula ("First Bank").[1] Although not a party to this action, First Bank plays an instrumental role. First Bank sued Federal and Amperif in the United States District Court for the District of Montana (hereinafter "Montana Action"), alleging that a modification[2] to the NWC Contract was not "duly authorized" by the Government and, therefore, Amperif and, subsequently, Federal had failed to convey a valid contract as warranted. (Exs. to Aff. of G. Stewart Webb, Jr. [hereinafter Webb Aff. Exs.], Vol. 1, Ex. A at 3–9).

The District Court in Montana dismissed Amperif from the action for lack of personal jurisdiction, and Federal defended and ultimately prevailed against First Bank in the action. Federal claims that the Purchase Agreement's terms required Amperif to defend against First Bank in the Montana suit, and Federal seeks in this action to recover $251,930.71 in attorneys fees, costs, and expenses incurred in defending the Montana Action.

Amperif's counterclaim against Federal stems from the uncontested fact that First Bank withheld approximately $129,000 due and payable to Amperif under the 1978 Contract as a set-off in the Montana Action. First Bank paid those sums to Federal in December, 1992, after the Montana Action concluded. Amperif now seeks to recover those sums from Federal.

## II. Standard for Summary Judgment

A motion for summary judgment will be granted when the moving party demonstrates through pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A party opposing summary judgment must go beyond the pleadings and identify with specificity facts supporting the existence of a disputed fact. Fed.R.Civ.P. 56(e); *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Furthermore, the facts presented in the opposition must be sufficient to preclude a motion for directed verdict when taken as true and afforded all justifiable inferences on the opposing party's behalf, considering the relevant proof burden. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251, 255, 106 S.Ct. 2505, 2511, 2513, 91 L.Ed.2d 202 (1986); *United States v. Diebold,* 369 U.S. 654, 655, 82 S.Ct. 993, 993, 8 L.Ed.2d 176 (1962).

## III. Plaintiff's Motion and Defendant's Cross–Motion for Summary Judgment—Breach of Contract: The Duty to Defend Against the Montana Action

Federal seeks summary judgment against Amperif on two issues. First, Federal asks the Court to grant summary judgment as to Amperif's contractual duty to defend the

---

1. First Bank now operates under the name First Interstate Bank of Missoula, N.A.

2. Amperif conveyed the modification to the NWC Contract in Delivery Order Nos. 6 and 8 on July 29, 1981 and August 12, 1981, respectively. (Exs. to Mem. of Federal Leasing, Inc. in Supp. of Mot. for Summ.J. on Am.Compl. [hereinafter Exs. to Federal's Mem.Re.: Am.Compl.], Exs. 7, 8). Federal subsequently conveyed the rights

under the modification to First Bank in August and September, 1981. (*Id.* Exs. 9, 10). The original NWC Contract was transferred from Amperif to Federal and then to First Bank prior to this time and was not in issue in the Montana Action. (*Id.* Exs. 2, 3). For the purposes of this memorandum "NWC Contract" encompasses the modification to the contract.

Montana Action brought by First Bank. (Mem. in Supp. of Mot. of Pl. Federal Leasing, Inc. for Summ.J. on Am.Compl. [hereinafter Federal's Mem.Re.: Am.Compl.] at 3). Federal contends that the Federal/Amperif contract encompassed by the Purchase Agreement and Delivery Orders unambiguously provides that Amperif will defend any suits contesting the title or interest in the government contract payments or equipment. Federal argues that the suit brought by First Bank and defended by Federal was a suit within the meaning of the contract, and that, as Maryland law governs the contract interpretation, this Court should construe the contract terms and award summary judgment to Federal regarding Amperif's duty to defend the Montana Action. In addition, Federal requests that the Court award summary judgment in the amount of $251,930.71 in attorneys fees, costs, and expenses incurred by Federal in defending the suit.[3]

Defendant Amperif asserts in its opposition and cross-motion for summary judgment that Federal's claim is barred by the statute of limitations. Alternatively, Amperif contends that the Montana Action is not a suit within the meaning of the contract. Finally, Amperif argues that even if summary judgment were to be granted regarding its liability to defend the Montana Action, factual disputes would exist as to the amount for fees, costs, and expenses and, therefore, summary judgment is not available as to the whole of the matter.

### A. Statute of Limitations

■ Federal initially filed suit against Amperif on September 8, 1987, after Amperif refused to defend the Montana Action as requested by Federal in January, 1986. (See Compl. ¶ 45; Answer ¶ 3 (documenting Federal's request).[4] The proceedings were stayed by this Court on September 1, 1988, pending the outcome of the Montana Action. On February 4, 1993, the stay was lifted, and on May 12, 1993, Federal filed both a motion for leave to file an amended complaint and the proposed amended complaint. This Court granted Federal's motion the next day. Amperif contends that Federal's amended claim is barred under Maryland's three-year statute of limitations. (See Mem. in Supp. of Cross–Mot. of Def. Amperif Corp. for Summ.J. on Am.Compl. & in Opp'n to Mot. of Pl. Federal Leasing, Inc. for Summ.J. Thereon [hereinafter Amperif's Opp'n Re.: Am.Compl.] at 6). Amperif asserts that Federal's amended pleading relies on a different set of facts and asserts a new theory of recovery and, therefore, does not relate back to the original complaint under Maryland or federal law. (Id. 6–7; Reply Mem. in Supp. of Cross–Mot. of Def. Amperif Corp. for Summ.J. on Am.Compl. [hereinafter Amperif's Reply Re.: Am.Compl.] at 2–8). Moreover, Amperif claims that the original complaint did not provide the requisite notice under Federal Rule 15(c) and that relation back is inappropriate, because Amperif will suffer prejudice if relation back is allowed. (Amperif's Reply Re.: Am.Compl. at 6–8).

■ Federal Rule 15(c) governs the relation back of amendments and controls in the face of conflicting and less generous state law. *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 611–12 (4th Cir.), *cert. dismissed*, 448 U.S. 911, 101 S.Ct. 25, 65 L.Ed.2d 1141 (1980).[5] Under Rule 15(c), an amendment

---

3. Federal submits that it is entitled to these damages by virtue of Amperif's breach of its contractual duty to defend (*see* Exs. to Mem. in Supp. of Mot. of Pl. Federal Leasing, Inc. for Summ.J. on Am.Compl. [hereinafter Exs. to Federal's Mem. Re.: Am.Compl.], Ex. 1 [hereinafter "Purchase Agreement" or "PA"] ¶ 3.3) or, alternatively, as a required reimbursement for performing an obligation of Amperif's (*see* PA ¶¶ 8.1–.2 (stating that party is in default if it fails to perform terms and conditions of contract and non-defaulting party may perform defaulting party's contractual obligation and then seek reimbursement for all "costs, fees or expenses" of performance). Whether relief is granted under a breach or reimbursement theory is irrelevant in light of the fact that without an obligation under the duty to defend paragraph, Federal would not have undertaken an obligation owed by Amperif and thereby be due any reimbursement.

4. Amperif apparently does not contend that the initial complaint was barred by the statute of limitations.

5. A different case would be presented if the state statute provided the substantive right as opposed to merely the time limit for exercising that right. *See Davis*, 615 F.2d at 609 n. 2; *Resolution Trust Corp. v. Olson*, 768 F.Supp. 283 (D.Ariz.1991). The statute of limitations at issue in this action,

relates back to the date of the original pleading when "... the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading...." Fed.R.Civ.P. 15(c). Leave to amend is "freely given" absent prejudice to the opponent. *Ward Elec. Serv., Inc. v. First Commercial Bank*, 819 F.2d 496, 497 (4th Cir.1987); *Davis*, 615 F.2d at 613. In essence, if some factual nexus exists between the amendment and the original complaint, then the amendment is liberally construed to relate back to the original pleading, provided that the opposing party had notice of the claim and will not be prejudiced by the amendment. *See Tischler v. Baltimore Bancorp*, 801 F.Supp. 1493, 1497 (D.Md.1992) (relying on *Grattan v. Burnett*, 710 F.2d 160, 163 (4th Cir.1983), *aff'd*, 468 U.S. 42, 104 S.Ct. 2924, 82 L.Ed.2d 36 (1984)). Moreover, an amendment will not be disallowed merely because it asserts a new theory of recovery. *See Ward*, 819 F.2d at 497 (observing that change in theory is insufficient basis for denying amendment absent prejudice, bad faith, futility, or dilatoriness associated with motion).

Turning to the pleadings at issue, it is clear that a factual nexus exists between the original and amended pleadings. A comparison of the General Allegations presented in the original and amended complaints reveals an identical recitation of the facts giving rise to the lawsuit.[6] (*Compare* Compl. ¶¶ 5–39 *with* Am.Compl. ¶¶ 5–39 (articulating history of Amperif/Government, Amperif/Federal, Federal/First Bank relationships and Montana Action)). Both complaints arise out of the sale and assignment of the NWC contract and the subsequent suit brought by First Bank. Therefore, both complaints clearly stem from the same occurrence and relation back is proper, absent prejudice to Amperif.

Amperif's contentions that the original complaint failed to provide notice of the claim asserted in the amended complaint and that it is prejudiced by the amendment are unpersuasive. Amperif essentially focuses on one paragraph of the original complaint to the exclusion of the remaining 78 substantive paragraphs. Paragraph 44 alleges that if the modification to the NWC Contract was not duly authorized by the Government, then Amperif made a materially incorrect representation and, therefore, defaulted under the Purchase Agreement.[7] (Compl. ¶ 44). Amperif uses this language to argue that Federal's cause of action for breach of the duty to defend survived only if Amperif made such a misrepresentation. Therefore, Amperif argues that because it knew it had not made a misrepresentation,[8] it had no notice that Federal would sue for the costs of defending the Montana Action.

Amperif ignores the allegations in both the original and amended complaints that Federal tendered its defense to Amperif, (Compl. ¶ 45; Am.Compl. ¶ 40), and that Amperif "wrongfully and without justification refused to accept its obligation to defend and indemnify Federal Leasing against the claims of First Bank in the Montana Action," (Compl. ¶ 46; Am.Compl. ¶ 41). Moreover, the original complaint clearly sought to recover the costs of defending the Montana Action. (Compl. ¶¶ 50(a), 54(a)). Finally, Count Two (Breach of Contract—Indemnity) of the original pleading particularly presages the claim

---

however, does not provide the substantive right and is merely a general statute providing a three-year limitations period. Md.Cts. & Jud.Proc. Code Ann. § 5–101 (1989 & Supp.1993).

Moreover, the Advisory Committee notes to the 1991 Federal Civil Rules Amendments make clear that state law will govern relation back if the state law is more generous than the federal approach. *See also* 6A Charles A. Wright et al., Federal Practice and Procedure § 1503 (2d ed. 1990 & Supp.1993) (observing same). As the amendment is clearly allowed under federal law, however, one need not consider whether Maryland law would allow it.

6. The Court notes that the nexus present in this case far exceeds that required under Rule 15(c).

7. Article VIII of the Purchase Agreement provides, inter alia, that default occurs if either party furnishes a warranty or representation which is found to be materially incorrect when made. (*See* PA ¶ 8.1(b)).

8. The district court in Montana agreed as evidenced by its holding that the contract was a valid, duly authorized government contract. (Am.Compl., Ex. 15 ¶ 14 (court order finding modification "properly procured")).

advanced in the amended complaint. (Compl. ¶¶ 51–54).

Count Two states that the terms of the Purchase Agreement require Amperif to "indemnify, defend and hold Federal Leasing harmless against any default by Amperif in its obligations or representations." Paragraph 53 continues:

> Federal Leasing duly notified Amperif of its claim for indemnification and defense with respect to the claims asserted by First Bank in the Montana Action, and Amperif has *wrongfully and without justification failed and refused to* indemnify, *defend* or hold Federal Leasing harmless against First Bank's claims, all *in breach of Amperif's obligations under the Purchase Agreement.*

(*Id.* ¶ 53 (emphasis added)). Moreover, the claim alleges that Amperif's wrongful refusal to defend caused, and will continue to cause, Federal to incur attorney's fees in defending against First Bank's claims. (*Id.* ¶ 54). In addition to any judgment paid to First Bank by Federal, Count Two therefore seeks recovery of those fees. *(Id.).*

Although the Court recognizes that Federal's claims expressly tie Amperif's default to the alleged misrepresentation rather than alleging breach of contract based solely on the failure to defend in a separate count, this Court does not believe that such an omission by Federal was sufficient to leave Amperif without notice of this potential claim.[9] Amperif's assertion of prejudice based upon lack of notice is, therefore, unpersuasive. Accordingly, the Court finds that the amended complaint relates back to the original pleading and is not barred by the statute of limitations. Amperif's motion for summary judgment on this basis is, therefore, denied.

### B. The Contract Interpretation

▮ The Purchase Agreement expressly provides that Maryland law will govern the contract and its interpretation. (PA ¶ 9.2). Maryland courts have long followed the objective theory of contract interpretation. *See Maryland Dep't of Economic and Communi-*

*ty Dev. v. Attman/Glazer P.B. Co.,* 323 Md. 592, 604, 594 A.2d 138 (1991) (citing numerous authorities). Construction of an unambiguous written agreement is left to the court as a matter of law. *See, e.g., Faw, Casson & Co. v. Everngam,* 94 Md.App. 129, 135, 616 A.2d 426 (1992). Moreover, unambiguous contract terms are not subject to judicial interpretation, and a court must presume that the parties intended what they expressed. *See Macke Laundry Serv. Ltd. v. Alleco, Inc.,* 743 F.Supp. 382, 384 (D.Md. 1989) ("[w]here a contract is clear and unambiguous ... there is no room for construction"); *General Motors Acceptance Corp. v. Daniels,* 303 Md. 254, 261, 492 A.2d 1306 (1985) (same). The Court of Appeals of Maryland most succinctly set out the proper analysis in *Heat & Power Corp. v. Air Products & Chemicals, Inc.,* 320 Md. 584, 596, 578 A.2d 1202 (1990). The court stated:

> [T]he trial judge must first consider 'the character of the contract, its purpose, and the facts and circumstances of the parties at the time of execution.' Second, with this background, the judge examines the four-corners of the contract to determine if the contract is unambiguous. An ambiguity exists when, to a reasonably prudent person, the language used in the contract is susceptible of more than one meaning. If the contract is ambiguous, the court must consider any extrinsic evidence which sheds light on the intentions of the parties at the time of the execution of the contract.

*Id.* (citations omitted); *see also Attman/Glazer,* 323 Md. at 604–05, 594 A.2d 138. Applying the above analysis, this Court finds that the contract term dispositive of Amperif's liability to defend against the Montana Action is unambiguous and, therefore, summary judgment will be granted to Federal Leasing as to Amperif's duty to defend.

### Analysis

▮ As stated above, Maryland law requires a court to consider the character and purpose of the contract as well as the facts and circumstances of the parties at the time

---

9. The Court observes that Federal clearly apprised Amperif of its intention to seek costs of defense in 1986 and again in 1989. (Exs. to Federal's Mem.Re.: Am.Compl., Ex. 12 at 2; Exs. to Suppl.Aff. of G. Stewart Webb, Jr. [hereinafter Webb Suppl.Aff.Exs.], Ex. S).

of execution. Federal and Amperif executed the Purchase Agreement on July 31, 1980. (Pl.'s Am.Compl. ¶ 11; Def.'s Answer to Am. Compl. ¶ 3). The Purchase Agreement set out the framework for future Federal/Amperif transactions to be completed through the execution of Delivery Orders. (Pl.'s Am. Compl. ¶ 12; Mem. in Supp. of Cross–Mot. of Counterclaimant Amperif Corp. for Summ.J. on Am.Countercl. & in Opp'n to Mot. of Counterdef. Federal Leasing, Inc. for Summ.J. Thereon [hereinafter Amperif's Mem.Re.: Am.Countercl.] at 3–4). The Delivery Orders specifically incorporated the terms and conditions of the Purchase Agreement. (See, e.g., Exs. to Federal's Mem.Re.: Am.Compl., Exs. 1 at 1, 7 at 1, 8 at 1; Amperif's Mem.Re.: Am.Countercl., Ex. 15 at 1). On July 31, 1980, in addition to executing the Purchase Agreement, Amperif and Federal executed Delivery Order No. 1, (Exs. to Federal's Mem.Re.: Am.Compl., Ex. 2) and a blank Instrument of Assignment of Claims (Am.Compl. ¶ 17; Answer to Am. Compl. ¶ 7). Although Amperif might not have been aware that Federal would subsequently sell the newly acquired rights to First Bank specifically, Amperif was aware that Federal was in the brokering business and Amperif was familiar with the assignment process. (Webb Aff.Exs., Ex. M at 2). In ascertaining the meaning of a contract, the contract must be considered in its entirety, and, whenever possible, each clause must be given effect. *Sagner v. Glenangus Farms, Inc.,* 234 Md. 156, 167, 198 A.2d 277 (1964). As Federal correctly points out, the Purchase Agreement clearly anticipates further assignment. For example, Article II, paragraph 2.2, addressing the "Purpose of the Contract," explicitly states that "Buyer [Federal] *or its Assigns* will be solely entitled to monthly payments under the Seller's [Amperif's] Contract in the total amount indicated on the Delivery Order" and obligates Amperif to execute any instruments of assignment required to implement the agreement. (Emphasis added). In addition, the

Purchase Agreement binds the parties, their successors, and assigns (PA ¶ 9.1), it requires Federal to hold any monies due Amperif and received by Federal or its assigns in trust for Amperif (PA ¶ 5.1), and it extends the conditions of default to the parties' successors and assigns (PA ¶ 8.1).

■ With this background, the Court now turns to the contract language at issue. Article III of the Purchase Agreement addresses the "Continuing Obligation of the Seller." Paragraph 3.3 states that "[s]eller, its successors and assigns, will defend the sale of its interest, including Buyer's title, in the Equipment and the Prime Contract payments, against the claims and demands of all persons." Federal contends that this language unambiguously obligated Amperif to defend the Montana Action. Amperif argues unconvincingly that paragraph 3.3 only applies to the interest conveyed by Amperif and that Federal attempts to "extend the language to apply to Federal's sale of its own interest" and thereby to obligate Amperif to defend third-party suits.[10] (Amperif's Opp'n Re.: Am.Compl. at 10). Amperif's position is that if Federal had desired this result, Federal should have specified terms to that effect. (*Id.*). Yet, Amperif makes no attempt whatsoever to explain the significance of the words "any person," which clearly are addressed to this very scenario. Amperif simply leaves the Court without any explanation of the purpose or effect of paragraph 3.3 that harmonizes with its interpretation. If Amperif is correct, the paragraph requires Amperif to defend itself only against a claim from Federal. In that all contract provisions should be construed to give them meaning, rather than to make them meaningless, Amperif's construction is unacceptable. *Verba debent intelligi cum effectu ut res magis valeat quam pereat. See Berg v. Erickson,* 234 F. 817 (8th Cir.1916).

■ Amperif also attempts to read ambiguity into the contract by arguing that the Purchase Agreement does not "provide that

---

**10.** Amperif also argues that the duty to defend is ambiguous because it does not expressly include the duty to defend *invalid* third party claims. (Amperif's Opp'n Re.: Am.Compl. at 12). This argument is without merit because under this interpretation the duty could only be determined after the resolution of the suit. The duty to defend would, therefore, be transformed into a mere obligation to reimburse legal fees.

Federal will further assign the payment stream from the subject contracts or that Amperif was making representations and warranties that would extend beyond Federal itself." (Amperif's Opp'n Re.: Am.Compl. at 10). These contentions completely ignore paragraph 5.1, requiring Federal to hold monies in trust for Amperif if received by Federal "or its assigns"[11] and paragraph 9.1, which explicitly binds the parties and their respective "successors and assigns." Amperif's argument suggests that paragraph 9.1 abrogates Amperif's obligations under the Purchase Agreement upon assignment by Federal, while still constraining the assigns of Federal, effectively creating only a one-way street. Moreover, Amperif's suggestion that some express indication is required to extend its representations and warranties to Federal's assigns offends simple hornbook law. *See, e.g., Maryland Motor Vehicle Sec. Fund v. All Coverage Underwriters, Inc.,* 22 Md.App. 586, 614, 325 A.2d 115 (1974) (citing 6 Am.Jur.2d *Assignments* § 102 for basic principle that assignee takes subject of assignment with all rights and remedies available to assignor); Maryland Law Encyclopedia *Assignments* § 43 (1978) (same). Finally, paragraph 8.1(b) expressly provides that a default exists if "[e]ither party, or its successors and assigns, has furnished to the other any warranty, representation, certificate, or document which is found to have been materially incorrect when made."

In short, Amperif effectively asks the Court to read paragraph 3.3 out of the Purchase Agreement. This the Court neither can, *see Sagner, supra,* nor will, do. The language of paragraph 3.3 is unambiguous and speaks for itself.[12] A reasonably pru-

dent person could not understand the paragraph to suggest two possible meanings. The language says that the seller will defend the sale of interests against the claims and demands *of all persons.* The Montana Action brought initially against Federal and Amperif and defended by Federal alone clearly involved a controversy over the interest in the NWC Contract[13] sold to Federal and assigned to First Bank. It is patently unreasonable in light of the background information and the express language of paragraph 3.3 to conclude that this paragraph is ambiguous.

Having considered the factual background, the language of paragraph 3.3, and the failure of Amperif to raise any legitimate question as to the clarity of the language, the Court finds that the language is unambiguous and obligates Amperif to defend in the Montana Action. Therefore, summary judgment will be granted to Federal on the issue of Amperif's duty to defend the Montana Action.

### C. Attorney's Fees and Expenses

As stated above, in addition to the liability issue, Federal requests summary judgment in the amount of $251,930.71 in attorneys' fees, costs, and expenses incurred in the Montana Action. Amperif advances two arguments in opposition to Federal's motion and in support of its own motion for summary judgment denying attorneys' fees. First, Amperif argues that the contract does not obligate Amperif to reimburse attorneys' fees. Next, Amperif argues that even if it is obligated to pay those fees under the contract, the actual fees claimed by Federal are unreasonable. In support of that argument, Amperif compares: 1) the fees incurred by

---

11. Interestingly, Amperif relies on this very paragraph in its counterclaim against Federal. (*See infra* pp. 1078–1080).

12. Amperif is apparently in agreement as evidenced by its acknowledgement that the language of the Purchase Agreement "speaks for itself." (*See* Answer to Am.Compl., Am.Countercl. and Set-Off ¶ 4; *see generally* Answer to Am.Compl., Am.Countercl. and Set-Off) (stating repeatedly that "written agreement speaks for itself").

  *See also, Pacific Indem. Co. v. Interstate Fire & Casualty Co.,* 302 Md. 383, 390, 488 A.2d 486

(1985) (citing cases where contract language was found unambiguous); *Aragona v. St. Paul Fire & Marine Ins. Co.,* 281 Md. 371, 374–75, 378 A.2d 1346 (1977) (finding "any dishonest, fraudulent, criminal ... act" unambiguous and cited in *Pacific Indem.*); *C & H Plumbing & Heating, Inc. v. Employers Mut. Casualty Co.,* 264 Md. 510, 513–17, 287 A.2d 238 (1972) (holding unambiguous meaning of "loss by infidelity of ... an employee and cited in *Pacific Indem.*).

13. The Court has satisfied itself on this point by examination of appropriate materials in the record of this case pertaining to the nature of the Montana action.

Federal and Federal's net potential damages liability in the Montana Action and 2) the fees incurred by Amperif and Federal during the appeal of the Montana Action.

Federal responds that the Purchase Agreement's language providing the duty to defend (PA 3.3), and the right of a party to assume a breaching party's obligations and subsequently seek reimbursement for the costs (PA 8.1–.2), unambiguously obligates Amperif to reimburse attorneys' fees. Furthermore, Federal argues that Amperif has not provided sufficient specificity and analysis in its criticism of the fees to preclude summary judgment in favor of Federal.[14]

Having already determined that the Purchase Agreement unambiguously obligated Amperif to defend the Montana Action, this Court cannot give credence to Amperif's argument that it has no duty to reimburse attorneys' fees, costs, and expenses. Amperif contends that if Federal had intended such a duty, Federal could have explicitly so provided. The Court is convinced that Federal did explicitly so provide. As stated above, Federal clearly and unambiguously set out Amperif's duty to defend in the Purchase Agreement. Moreover, the Purchase Agreement provides that if a party fails to perform a term or condition of the Purchase Agreement, then that party is in default (PA ¶ 8.1(c)), and the non-defaulting party may cure the default and seek reimbursement for *all costs, fees or expenses of such performance* (PA ¶ 8.2 (emphasis added)). When these provisions are analyzed together, Amperif's obligation to pay attorneys' fees is manifest.

Even if the Purchase Agreement did not expressly provide for attorneys' fees, Maryland law interpreting the contractual duty to defend has held that the non-breaching party is entitled to those fees.

Although Maryland follows the general rule that each party is required to bear its own litigation expenses, excluding ordinary court costs, see *Sullivan v. Easco Corp.*, 662 F.Supp. 1396, 1402 (D.Md.1987), and *Collier v. MD–Individual Practice Ass'n*, 327 Md. 1, 11, 607 A.2d 537 (1992) (citing *McGaw v. Acker, Merrall & Condit Co.*, 111 Md. 153, 73 A. 731 (1909)), Maryland law recognizes that attorneys' fees may be recovered if a contract so provides. See *Sullivan*, 662 F.Supp. at 1402 (relying on *Addressograph–Multigraph Corp. v. Zink*, 273 Md. 277, 288–89, 329 A.2d 28 (1974)) and *Collier*, 327 Md. at 17, 607 A.2d 537. Cases analyzing the contractual duty to defend have most commonly arisen in the context of insurance agreements. These cases have consistently held that an insured is entitled to recover the attorneys' fees incurred when an insurer breaches its contractual duty to defend and the insured is forced to mount her own defense.[15] See, e.g., *Continental Casualty Co. v. Board of Educ.*, 302 Md. 516, 531, 489 A.2d 536 (1985) (apportioning defense costs between counts alleging conduct covered by insurance and those counts outside scope of coverage); *Bankers & Shippers Ins. Co. v. Electro Enter., Inc.*, 287 Md. 641, 648–49, 661, 415 A.2d 278 (1980); and *Brohawn v. Transamerica Ins. Co.*, 276 Md. 396, 409–10, 347 A.2d 842 (1975) (stating that duty to defend is separate obligation from duty to indemnify). Although Amperif argues that the line of insurance cases is inapposite, this

**14.** Federal also advances three additional arguments. First, Federal argues that because Amperif failed to identify, in response to Federal's interrogatory, any expert witnesses to be called at trial Amperif has waived its right to challenge the reasonableness of Federal's fee request. Second, Federal contends that Amperif's affiant is not a competent expert witness because Amperif did not identify him as an expert and he is not a competent fact witness because he has no personal knowledge of the trial proceedings in the Montana Action. Finally, Federal argues that Amperif may not compare its own fees with Federal's because Amperif has refused all discovery related to the amount, scope, and breakdown of its fees. Because the Court finds that the

Purchase Agreement unambiguously requires Amperif to reimburse the fees and that Amperif cannot, under the summary judgment standard, sustain its burden to demonstrate that there is a genuine dispute as to the amount and reasonableness of those fees, the Court need not address Federal's additional arguments.

**15.** The Court notes that a contract also may expressly limit the breaching party's fee liability. See, e.g., *Mortgage Investors v. Citizens Bank & Trust Co.*, 29 Md.App. 591, 596, 599, 349 A.2d 647 (1976) (noting that payment of attorneys' fees may be enforced up to amount stipulated in agreement).

principle is clearly applicable outside the insurance context.[16] *See, e.g., Quaker State Oil Ref. Corp. v. National Fulfillment Sys. Corp.*, 1991 WL 32811, at *4, 1991 U.S.App. LEXIS 4117, at *10 (4th Cir. Mar. 14, 1991) ("There is no difference between the promise to defend in an insurance case and the [contractual] agreement ... in the case at bar."); *Collier*, 327 Md. at 5, 607 A.2d 537 (stating that insurance policies are construed in same manner as any contract and are not subject to more stringent construction against insurer). For these reasons, the Court finds that the Purchase Agreement clearly requires Amperif to reimburse the attorneys' fees incurred by Federal in the Montana Action.

█ Federal must nevertheless prove the fee amount claimed with the certainty required by other actions for damages. *Bankers & Shippers*, 287 Md. at 661, 415 A.2d 278. Federal has supplied detailed fee information based on the monthly billing statements that it received from Worden, Thane, and Haines, the local counsel retained in Montana, and from Venable, Baetjer and Howard, Federal's lead counsel. (*See* Webb Aff.Exs., Vol. II). The documentation chronicles the eight and one-half years of activity in the Montana Action[17] and details the hours worked, how the time was spent, and the reimbursable costs incurred by the firms.[18] (*Id.*).

Amperif does not question the adequacy of Federal's documentation or contend that these fees were not attributable to the Montana Action. Instead, Amperif opposes Federal's summary judgment motion by arguing that the fees are unreasonable. The Court notes that Maryland law does not explicitly require a reasonableness analysis unless the contract provides recovery of "reasonable costs" or "reasonable attorneys' fees."[19] *See Stop & Shop Cos. v. Indian Head Highway*, 712 F.Supp. 1215, 1223 (D.Md.1989) (awarding reasonable attorneys' fees where lease specifically allowed recovery of same); *Sullivan*, 662 F.Supp. at 1404 (applying reasonableness test where contract authorized reimbursement of "reasonable fees and expenses" of counsel). *But see Johnson & Towers Baltimore, Inc. v. Vessel "Hunter"*, 824 F.Supp. 562, 575–76 (D.Md.1992) (reading in reasonableness requirement). But, even assuming that reasonableness is implicitly required, the Court finds for the following reasons that there is no triable dispute as to whether these fees are reasonable and that Amperif's opposition is insufficient to preclude summary judgment in favor of Federal.

Under Maryland law, when a contract explicitly provides for the recovery of reasonable costs or reasonable attorneys' fees, the court has the right to determine what constitutes a reasonable fee. *See Sullivan*, 662 F.Supp. at 1404 (citing Maryland law). The party seeking fees must provide documentation as to the hours worked and how the time was spent.[20] *Id.* Absent this documentation requirement, Maryland law has not set forth a specific test for determining reasonableness in this context. *Id.*

---

**16.** The premise that a duty to defend might not encompass attorneys' fees is analytically unsound as it would leave the nonbreaching party without a remedy. *Cf. Anderson & Ireland Co. v. Maryland Casualty Co.*, 123 Md. 67, 69–70, 90 A. 780 (1914) (noting that where clear intent of agreement is to relieve party of defense expenses, party is entitled to extent of loss from breach).

**17.** Specifically, the billing statements detail Worden's participation in the action from October 1, 1984 through February 25, 1993 and Venable's participation from September 1, 1984 through January 31, 1993. The Court also notes that this documentation weighs approximately 5 pounds, therefore averaging a little over $50,000 per pound.

**18.** The billing statements indicate that Worden's fees ranged between $90 and $72 per hour and

Venable's rates varied between $170 and $125 for services rendered by attorneys Madden and Webb.

**19.** Maryland law apparently distinguishes between actions brought to recover the attorneys' fees incurred by the party in defending himself and those incurred in declaratory judgment actions brought to determine whether the opponent actually breached a duty to defend, *see, e.g., Northern Assurance Co. v. EDP Floors, Inc.*, 311 Md. 217, 232, 533 A.2d 682 (1987) (successful plaintiff in declaratory judgment action brought to determine whether defendant wrongfully refused to defend may recover reasonable attorneys' fees) and cases cited therein.

**20.** Federal has met this burden and Amperif does not contest the adequacy of Federal's documentation as discussed *supra*.

Amperif challenges the reasonableness of the fees for three reasons. First, Amperif takes the position that the fees are unreasonable because First Bank sought $252,000 in damages in the Montana Action while holding $129,000 as a set-off, therefore leaving a net amount of $123,000 to settle the case.[21] (Amperif's Opp'n Re: Am.Compl. at 12–13; Amperif's Reply Re.: Am.Compl. at 11). Next, Amperif's attorney, Mr. Matthias, concludes that the fees are unfair and unreasonable based upon: 1) a "complete review of the proceedings in the Montana Action," and 2) a comparison of his billing file generated during the Montana appeal with Federal's fee documentation covering the entire eight and one-half years of litigation. (See Decl. of Michael R. Matthias in Supp. of Cross–Mot. of Amperif Corp. for Summ.J. on Am.Countercl. and Am.Compl. and in Opp'n to Mot. of Federal Leasing, Inc. for Summ.J. Thereon [hereinafter Decl. of Matthias] at 3). Finally, Amperif contends that the entire fee amount is unreasonable because Federal paid approximately four times more in fees in defending against First Bank's appeal to the Ninth Circuit than did Amperif.[22] (Id. at 3–5).

Amperif's first argument attacks the fees for being disproportionate to Federal's potential exposure for damages.[23] This argument is not persuasive, because while such a comparison may be a relevant factor in determining the reasonableness of the fees, it is not dispositive *per se*, in that a party may be disinclined to settle a case solely for financial reasons.

Amperif's second and third arguments implicitly ask the Court to assume: 1) that Amperif and Federal bore the same litigation burden during the appellate phase of the litigation and/or 2) that any difference between these burdens was offset by the necessity that Mr. Matthias review the lower court proceedings. Amperif does not, and apparently cannot, claim that it and Federal prepared to argue the same issues on appeal.[24] Amperif instead notes that both "were faced with going through the same steps as appellees," apparently referring to the procedural aspects of the appeal, and that both had previously completed the basic work and research required for the appeal as it was essential to their success below. (Decl. of Matthias at 3). Amperif suggests that its burden was in fact greater than Federal's, because Amperif's counsel was not involved in the district court proceedings and its initial research was older, therefore necessitating more revision. (Id.). Amperif attempts to persuade this Court that the *entire* fee is unreasonable based solely on the attack of the appellate fees and Mr. Matthias' conclusory statements.

The law is clear that a party opposing summary judgment must identify with specificity facts supporting the existence of a disputed material fact. Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 325, 106 S.Ct. at 2554. Although Amperif attempted to accomplish this through its comparison of the Federal/Amperif fees incurred during the appeal, the absence of a similar litigation burden renders it a comparison of "apples and oranges," *i.e.*, no comparison at all.[25] *See*

---

21. The $129,000 held by First Bank is the same $129,000 that Amperif now seeks from Federal in its Amended Counterclaim.

22. Amperif joined Federal in opposing First Bank's appeal in Montana.

23. Amperif's comparison, however, amounts to hindsight, comparing the fees incurred during the entire eight and one-half years rather than attempting to compare the fees incurred through the relevant period, i.e., the fees incurred through May and June of 1991 when summary judgment was granted in favor of Federal.

24. First Bank appealed the District Court's order dismissing Amperif from the case for lack of personal jurisdiction as well as the decision to

grant summary judgment in favor of Federal. Amperif's involvement at the appellate stage apparently focused on Amperif's motion to dismiss the appeal for insufficient notice and the merits of the personal jurisdiction issue. (See Webb Aff.Exs., Vol. 1, Ex. B (providing Ninth Circuit's unpublished decision)). Moreover, Amperif agreed in advance to the allocation to Federal of sixteen of the available twenty minutes of oral argument. (Supplemental Aff. of G. Stewart Webb, Jr. at 2, ¶ 6). The Court finds this persuasive as to the issue of each party's litigation burden.

25. The Court notes that even if Amperif could have raised a genuine issue of material fact as to the reasonableness of the fees incurred during the appeal this alone would not be sufficient to

*Quaker State,* 1991 WL 32811, at \*3, 1991 U.S.App. LEXIS 4117, at \*6–7. Moreover, the fact that the amount of fees and potential damages liability may be disproportionate is not alone sufficient to oppose summary judgment. Considering the length of the litigation, the relative litigation burdens, and the hourly rates charged by counsel, this Court cannot conclude that there is evidence that would satisfy a reasonable fact-finder that the fees incurred have been shown to be unreasonable, by a preponderance of the evidence. *See Celotex* and *Anderson.* Accordingly, Amperif's motion for summary judgment will be denied, and summary judgment will be granted to Federal in the amount of $251,930.71 in attorneys' fees, costs, and expenses incurred in the Montana Action.[26]

*IV. Defendant's Motion and Plaintiff's Cross–Motion for Summary Judgment—Breach of Contract: Duty to Remit Maintenance Payments*

█ Amperif seeks summary judgment in the amount of $128,786.53, plus interest earned since December 24, 1992. The following facts are uncontroverted. In September, 1980, Amperif conveyed its rights under the 1978 Contract to Federal through Delivery Order No. 3. (Exs. to Mem. of Federal Leasing, Inc. in Supp. of Mot. for Summ.J. on Am.Countercl. [hereinafter Exs. to Federal's Mem.Re.: Am.Countercl.], Ex. 15). Amperif, however, expressly retained its rights to payments for computer equipment maintenance. (*Id.* Ex. 15). Federal assigned its rights in the 1978 Contract to First Bank in October, 1980. (*Id.* Ex. 16). The Government remitted the maintenance payments,

call into question the reasonableness of the entire fee.

**26.** Federal has not requested fees and expenses incurred in this action, and accordingly none will be granted.

**27.** Federal also argues that Amperif is now estopped from contending that the action did not accrue in 1984 because Amperif successfully avoided personal jurisdiction in the Montana Action by asserting that its dispute over the maintenance funds involved only Federal and not First Bank. (Federal's Opp'n Re.: Am.Countercl. at 9–12). As the Purchase Agreement clearly provided Amperif with two separate claims to the maintenance funds, and at least one of these did

along with the other monies owed, first to Federal and then to First Bank, after it acquired the contract rights. (Mem. in Supp. of Mot. of Counter–Def. Federal Leasing, Inc. for Summ.J. on Am.Countercl. [hereinafter Federal's Mem.Re.: Am.Countercl.] at 8; PA ¶ 5.1). Sometime in 1983, First Bank began withholding maintenance payments as a set-off against any judgment it might recover against Federal and Amperif in the Montana Action). (*Id.* at 8, Exs. to Federal's Mem.Re.: Am.Countercl., Exs. 20, 21; Exs. to Webb Aff., Ex. A ¶¶ 46–51). First Bank paid $128,786.53 in withheld maintenance funds to Federal in December, 1992, after Federal prevailed in the Montana Action. (Decl. of Matthias, Ex. 1; Supplemental Decl. of Michael R. Matthias in Supp. of Reply Mem. in Supp. of Cross–Mot. of Amperif Corp. for Summ.J. on Am.Countercl. [hereinafter Suppl.Decl. of Matthias], Ex. 3; Aff. of G. Stewart Webb, Jr. ¶ 12).

Federal argues that Maryland's three-year statute of limitations bars Amperif's claim to these funds. According to Federal, Amperif's claim accrued no later than October, 1984, when Amperif demanded that Federal take responsibility for First Bank after discovering that First Bank had diverted funds. (Federal's Mem.Re.: Am.Countercl. at 9–12; Federal Leasing's Opp'n to Amperif's Cross–Mot. for Summ.J. on Am.Countercl. [hereinafter Federal's Opp'n Re.: Am.Countercl.] at 9–14).[27] Federal contends, therefore, that because Amperif's claim is a set-off rather than a recoupment arising from the same transaction as Federal's claim, the counterclaim filed by Amperif in July, 1988 is time-barred. (*Id.* at 12–15).[28]

not accrue until December, 1992, the Court need not address this question. (*See infra* pp. 1080–1081).

**28.** The Court notes that the question of whether Amperif's claim is a set-off or recoupment is not nearly so clear as Federal portrays it. Maryland law allows a defendant to seek compensation from the plaintiff, by way of recoupment, for damages resulting from the same transaction. *See Smith v. Johns Eastern Co.,* 269 Md. 267, 271, 305 A.2d 460 (1973); *First Nat'l Bank v. Shpritz,* 63 Md.App. 623, 638, 493 A.2d 410 (1985). The damages may be proven under the general issue plea unless the defendant seeks compensation in excess of the amount owed to

Amperif, on the other hand, argues that the statute of limitations does not apply, for two reasons. Amperif contends, first, that the Purchase Agreement created a trust relationship between Federal and Amperif which was not subject to a statute of limitations and, second, that the cause of action did not accrue until Federal received the money in December, 1992. (Amperif's Mem.Re.: Am.Countercl. at 10–13). In response, Federal states that any trust relationship was repudiated by Federal's failure to oppose First Bank's claim of set-off and thereby protect Amperif's interests in the maintenance funds and, therefore, the statute of limitations began to run in 1984. (Federal's Opp'n Re.: Am.Countercl. at 3–9).

Paragraph 5.1 of the Purchase Agreement provides that "[t]o the extent Buyer [Federal] or its assigns receives amounts other than rental to which Seller [Amperif] remains entitled then Buyer will notify Seller immediately upon receipt and hold such funds in trust for Seller payable to Seller upon demand." Applying the same principles of contract interpretation as applied *supra* in Part B, the Court finds that this language clearly imposes two separate obligations upon Federal. First, Federal is required to hold in trust any Amperif monies it receives and to pay such funds to Amperif upon demand and, second, Federal is required to act, in essence, as a surety for any funds belonging to Amperif that are received by Federal's assignees. Amperif could, therefore, have demanded that Federal pay over funds that First Bank held, whether or not Federal ever received such funds.[29] That Amperif had this right, however, does not negate the additional right created by the paragraph in question. Federal received the Amperif monies retained by First Bank in December, 1992, and Federal was obligated to hold those monies in trust upon receipt and to remit them to Amperif upon demand. Thus, Amperif's amended counterclaim, filed in June, 1993, is not barred by the statute of limitations[30]

the plaintiff. *See id.*, 269 Md. at 271, 305 A.2d 460; *Shpritz*, 63 Md.App. at 638, 493 A.2d 410. Recoupment permits a complete examination of the transaction on which the plaintiff sues and allows justice to be rendered in view of the transaction as a whole, *Smith v. Smith*, 79 Md. App. 650, 662, 558 A.2d 798 (1989), but does not apply where the damages arise from independent contracts or an independent wrong unconnected with the plaintiff's case, *Molesworth v. Schmidt*, 196 Md. 15, 21, 75 A.2d 100 (1950). The fact that two or more contracts may be involved, however, is not dispositive, *see Billingsley v. Kelly*, 261 Md. 116, 274 A.2d 113 (1971), and the scope of recoupment is determined by the complaint's allegations, *see Billman v. State Deposit Ins. Fund Corp.*, 88 Md.App. 79, 95, 593 A.2d 684 (1991) (relying on *State v. Hogg*, 311 Md. 446, 465–66, 535 A.2d 923 (1988)).

The claims of both Federal and Amperif involve an identical factual nexus—the lawsuit instituted by First Bank in Montana. Federal's suit stems from Amperif's refusal to defend against First Bank in the Montana Action, as required by the Purchase Agreement. Amperif's cause of action arises from First Bank's retention of Amperif's funds as a set-off for damages in the Montana Action and Federal's refusal to forward those funds upon demand as required by the Purchase Agreement. Both the Federal and Amperif claims, therefore, stem from breaches of the Purchase Agreement brought about because of First Bank's suit. The fact that *First Bank's conduct* involved two different Delivery Orders, which Federal seeks to characterize as independent contracts for recoupment purposes, is not dispositive. Nevertheless, because the Purchase Agreement clearly gave Amperif two bases for recovering the maintenance fees, *see infra* pp. 1080–1081, the Court need not decide whether recoupment was available.

29. The Court notes that it is not clear that Amperif ever made a demand that Federal fulfill its suretyship obligation under ¶ 5.1. Amperif did request Federal's help in obtaining the monies held by First Bank and in taking First Bank out of the "collection loop" to preclude First Bank from retaining additional maintenance fees. (Exs. to Federal's Mem.Re.: Am.Countercl., Ex. 22 at 4). Amperif did state that it looked to Federal for the receipt of the maintenance fees. (Exs. to Webb Aff., Vol. 1, Ex. M at 4, Ex. N at 16). Nevertheless, this is not necessarily the same as a request that Federal pay over these amounts out of its own assets. In light of the fact that Amperif knew it would be liable for any judgment in favor of First Bank pursuant to the indemnity clauses of the Purchase Agreement, it was certainly not unreasonable for Amperif to take a "wait and see" approach.

30. The Court also observes that a finding that Amperif's claim is time-barred would not further the policy behind the statute of limitations. The statute encourages the prompt determination of legal rights, precludes stale claims or demands that may create a disadvantage to the defending party, and reduces fraud and perjury. *See* Maryland Law Encyclopedia *Limitations of Actions* § 4 (1961).

Federal was aware from the inception of the Montana Action that Amperif claimed these

and, therefore, Federal's motion for summary judgment on the amended counterclaim will be denied and Amperif's cross motion for the same will be granted.

In that the amount involved is liquidated and the circumstances are otherwise appropriate for an award of prejudgment interest under Maryland law, *see e.g., Knowles v. Mutual Life Ins. Co. of New York*, 788 F.2d 1038, 1041–42 (4th Cir.), *cert. denied*, 479 U.S. 948, 107 S.Ct. 433, 93 L.Ed.2d 383 (1986), this Court's discretion is properly invoked for an award of prejudgment interest. The rate will be 6% simple interest per annum. *See Federal Sav. & Loan Ins. Corp. v. Quality Inns*, 876 F.2d 353, 359 (4th Cir. 1989).

## CONCLUSION

In summary, the Court finds that Federal is entitled to summary judgment on its Amended Complaint for attorneys' fees, and Amperif is entitled to summary judgment on its Amended Counterclaim requesting return of the withheld maintenance payments and interest from December 24, 1992. An Order providing for judgment accordingly will be entered separately.

## JUDGMENT ORDER

For the reasons stated in the foregoing Memorandum Opinion of even date entered herewith, IT IS, this 23rd day of November, 1993, by the Court, ORDERED and ADJUDGED:

1. That the pending motions for summary judgment BE, and they hereby ARE, GRANTED and DENIED to the extent stated in the said Memorandum Opinion;

2. That judgment BE, and it hereby IS, ENTERED in favor of plaintiff, against the defendant, on the claim-in-chief, in the amount of $251,930.71, with interest from the date hereof until paid;

3. That judgment BE, and it hereby IS, ENTERED in favor of the defendant/counterplaintiff and against the plaintiff/counterdefendant on the counterclaim, in the amount of $128,786.53, together with interest thereon at the rate of 6% simple per annum from December 24, 1992, until the date hereof, and with interest thereon at the federal statutory rate thereafter;

4. That the taxable costs under 28 U.S.C. § 1920, as to both parties, of this suit will be determined by the Clerk and divided by 3. The plaintiff and the defendant will, for this purpose, each file a timely bill of costs conforming to the Local Rules of this Court. The plaintiff will bear one-third of the total costs and the defendant will bear two-thirds of the total costs, as ultimately determined by the Clerk; and

5. That the Clerk of Court mail copies of the foregoing Memorandum Opinion and of this Order to counsel for the parties.

---

funds and Federal acknowledged Amperif's right to the payments in 1986. (*See* Exs. to Federal's Mem.Re.: Am.Countercl. Exs. 19–22) (providing correspondence between Federal and Amperif regarding withheld maintenance payments); Suppl.Decl. of Matthias, Ex. 4 ¶ 49 (Federal Answer to First Bank Complaint)). Federal cannot, therefore, claim that delay has prejudiced its defense against Amperif. Moreover, the question of who might ultimately lay claim to the maintenance payments was inextricably mired in the Montana Action itself. If Federal had not prevailed, First Bank would have retained the monies as a set-off from the total damages and Amperif would have had to bear responsibility for those damages. In this regard, Amperif did not delay the determination of rights to the maintenance funds. Finally, neither fraud nor perjury are at issue here. None of the policies behind the statute of limitations, therefore, are furthered by barring Amperif's claim.