Donald G. FARB,

v.

**FEDERAL KEMPER LIFE
ASSURANCE CO., et
al.**

No. CIV. JFM–01–0007.

United States District Court,
D. Maryland.

Feb. 11, 2003.

Bryan D. Bolton, Funk and Bolton, PA, Eric B. Myers, Rosenberg, Proutt, Funk and Greenberg LLP, John Snowden Stanley, Jr., Semmes, Bowen and Semmes PC, Baltimore, MD, for defendants.

Kenneth Michael Williams, Dulany and Leahy, Westminster, MD, for plaintiff.

## MEMORANDUM

MOTZ, District Judge.

Plaintiff, Donald G. Farb, moves for leave to amend his complaint. Plaintiff seeks to amend his complaint by adding a count against Defendant, Federal Kemper Life Assurance Co. ("Kemper"), in his capacity as successor trustee to a life insurance policy issued by Kemper to Charlotte Katz Shaffer. For the reasons that follow, I will grant the motion.

## I.

On May 22, 1997, Leonard Kopp and Joseph DiPietro, as trustees of the "Shareholders Cross Purchase Agreement dated 11/17/92" ("SCPA"), applied for a life insurance policy with Kemper. The proposed insured was identified as Charlotte Shaffer. The owner/applicant was identified as SCPA. The beneficiary was designated as SCPA. No contingent beneficiaries were identified. Additionally, Kopp and DiPietro signed the application on the line for "Signature of Owner/Applicant, if other than Proposed Insured" as "Trustees."

The SCPA is an agreement between Farb and Mrs. Shaffer, which provided in part that

upon the death of either Farb or Shaffer, certain jointly owned business interests would be transferred from the decedent's estate to the surviving partner.[1] The SCPA required the parties to maintain life insurance on each party's life in order to compensate the decedent's estate for its interest in the jointly owned property.

On August 15, 1997, Kemper issued policy number FK2447591 (the "policy") to Kopp and DiPietro, insuring the life of Mrs. Shaffer. The policy contained a suicide provision stating that:

> We will limit the proceeds we pay under this policy if the insured commits suicide, while sane or insane:
>
> 1. within 2 years from the Date of Issue; and
>
> 2. after 2 years from the Date of Issue, but within 2 years from the effective date of the last reinstatement of this policy.
>
> The limited amount will equal all premiums paid on this policy.

(Def.'s Ex. 3 at FK000461.)

On July 7, 1998, Mrs. Shaffer was found dead in the bedroom of her Damascus, Maryland home. The cause of death was a single gunshot wound to the head from a .45 caliber colt revolver. Shaffer's body, which was unclothed, was discovered by her husband, Richard Shaffer on the couple's bed. Upon discovering the body, Richard Shaffer contacted the Howard County Police Department and reported that his wife had committed suicide. Both the Howard County Police, after an investigation, and the doctor who performed the autopsy concluded that Mrs. Shaffer committed suicide.

On July 23, 1998, Sean Walsh, the general agent for the Shaffer policy notified Kemper that Mrs. Shaffer had died. Kemper advised Walsh that because the policy had been in effect for less than two years, an investigation was required. Additionally, Kemper advised Walsh that the beneficiary was the SCPA.

---

1. In March 1997, the SCPA was amended to reflect Shaffer's acquisition of Farb's interest in their kennel business, Ovation Kennels, Inc. Farb and Shaffer continued to jointly own certain real property.

On August 12, 1998, Kopp and DiPietro completed a claimant's statement for the proceeds of the policy and submitted the necessary paperwork. Kopp and DiPietro's claim noted that they were the beneficiaries of the policy as the trustees under the SCPA. On April 15, 1999, Kemper advised Kopp and DiPietro that it had denied their claim pursuant to the suicide exclusion in the policy and tendered $1,149.60, the amount of premiums paid under the policy. Kopp and DiPietro deposited the check issued by Kemper. On July 1, 1999, Kopp and DiPietro resigned as co-trustees.

On January 3, 2001, Farb brought this suit in his individual capacity. Essentially Farb alleged that Shaffer did not commit suicide and, therefore, he was entitled to the full value of the Kemper policy. Farb alleged that he had suffered $400,000 in damages (the amount of the policy) because "[a]ll persons and entities having any interest in the proceed of the Federal Kemper contract have, for value received, assigned any interest in the Federal Kemper contract to Plaintiff, who is solely entitled to payment thereof." (Compl ¶ 6.) Thus, Farb made clear that he was pursuing his claim under the theory that the rights to the insurance policy had been assigned to him. Farb confirmed this position when he testified that the basis for this allegation was a document entitled "Settlement Agreement," dated November 28, 2000. (*See* Farb Dep. at 183, Kemper Ex. 10 to Cross–Motion for Summ. J.)

During discovery, Farb submitted to Kemper a copy of the Settlement Agreement that he asserted assigned the policy to him. The Settlement Agreement was an agreement between Donald Farb and Lynn Farb, on one hand, and Ovation Kennels, Inc., Richard Shaffer, the Estate of Mrs. Shaffer, and Shelden Singer, on the other hand. In the Settlement Agreement, the Estate of Mrs. Shaffer, Mr. Shaffer, and Ovation assigned all interests that they may have had as beneficiaries of the Kemper insurance policy to Farb. Kopp and DiPietro, however, were not parties to the Settlement Agreement.

On May 14, 2002, Kemper informed Farb that it intended to challenge his standing to bring the action because the policy was not properly transferred or assigned to him by the alleged owners of the policy—Kopp and DiPietro. Farb, therefore, petitioned the Circuit Court for Carroll County to appoint him successor trustee to the SCPA. On July 12, 2002, Farb's petition was granted. Farb now seeks to add a count to his complaint in which he claims proceeds to the Kemper policy as successor trustee of the SCPA.

## II.

Leave to amend "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). In fact, "leave to amend a complaint should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Edell & Assocs., P.C. v. Law Offices of Peter G. Angelos,* 264 F.3d 424, 446 (4th Cir.2001) (citing *Edwards v. City of Goldsboro,* 178 F.3d 231, 242 (4th Cir.1999)); *see also Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). Kemper concedes that Farb is not acting in bad faith and that Kemper would not suffer a specific prejudice. Kemper does, however, argue that the motion should be denied on grounds of futility.

## A.

Kemper first argues that the proposed amendment is futile because Farb's new claim is barred by the applicable statute of limitations. It is undisputed that if Farb's new claim does not relate back to the filing of the original complaint, the new claim is barred by the three-year statute of limitations for breach of contract. Farb argues that his amended claim under Fed.R.Civ.P. 15(a) relates back to the date of the original pleading pursuant to Fed.R.Civ.P. 15(c).

As an initial matter, I note that Farb's motion should have been filed as a motion to permit plaintiff to serve a supplemental pleading under Fed.R.Civ.P. 15(d), rather than as a motion to amend pursuant to Rules 15(a) because the events giving rise to the trustee claim arose subsequent to the filing of the original complaint. *See, e.g., Knauer v. Johns–Manville Corp.,* 638

F.Supp. 1369, 1372 n. 1 (D.Md.1986). In the Fourth Circuit, however, when determining whether a supplemental pleading relates back, "the technical distinction between the two is not of critical importance, and is frequently simply disregarded by courts.... So long as the test of Fed.R.Civ.P. 15(c) is met, a supplemental pleading should ordinarily be given the same relation back effect as an amended pleading." *Davis v. Piper Aircraft Corp.,* 615 F.2d 606, 609 n. 3 (4th Cir.1980). Therefore, the relation-back analysis under Rule 15(c) applies whether the motion is considered under Rule 15(a) or under Rule 15(d).

■ Fed.R.Civ.P. 15(c)(2) states: "An amendment of a pleading relates back to the date of the original pleading when the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." The Fourth Circuit has set forth a two-prong test to be followed by courts in determining whether an amendment relates back: (1) "[f]irst, to relate back there must be a factual nexus between the amendment and the original complaint"; (2) "[s]econd, if there is some factual nexus an amended claim is liberally construed to relate back to the original complaint if the defendant had notice of the claim and will not be prejudiced by the amendment." *Grattan v. Burnett,* 710 F.2d 160, 163 (4th Cir.1983).

In arguing there is no factual nexus between the amended claim and the original complaint, Kemper focuses on Fed.R.Civ.P. 17(a), which provides in part:

> Real Party in interest. Every action shall be prosecuted in the name of the real party in interest.... No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

*See also* Fed.R.Civ.P. 17 advisory committee's note ("The provision should not be misunderstood or distorted. It is intended to prevent forfeiture when determination of the proper party to sue is difficult or when an understandable mistake has been made."). Kemper argues that the new claim cannot relate back to the date of the filing of the original complaint because Farb was not the real party in interest of the original complaint—rather, Kopp and DiPietro were the real parties in interest.

This argument fails for two reasons. First, the policy embodied in Rule 17(a) seems to favor Farb. It is understandable that Farb originally filed suit in his individual capacity. The purpose of the November 28, 2000 Settlement Agreement was to assign any rights to the policy to Farb. It is true that Kopp and DiPietro were not parties to the Settlement Agreement. However, this makes sense in light of the fact that they had resigned as trustees of the SCPA over a year earlier. The Settlement Agreement may not have legally satisfied assignment requirements under the Kemper policy, but it is excusable that Farb filed suit in his individual capacity because he believed the Settlement Agreement entitled him to any proceeds from the policy. Moreover, the fact that it took Kemper approximately seventeen months to notify Farb that it was challenging his standing to bring suit in an individual capacity demonstrates that Farb's apparent lack of standing was not plainly obvious.

Second, while Rule 17(a) is relevant to determining whether an amendment relates back under Rule 15(c), *see* Fed.R.Civ.P. 15 advisory committee's notes (1966 amendment), the standard is not whether Farb was originally the real party in interest, but rather whether the *Grattan* factors are satisfied.

■ The first *Grattan* factor is satisfied. Clearly, there is a factual nexus between Farb's trustee claim and Farb's original claim against Kemper. The only difference between the counts is the basis in which Farb alleges he is entitled to the proceeds of the policy—in the first, as assignee, and in the second, as trustee. In both claims, however, Farb is essentially alleging that Shaffer did not commit suicide, and, in both claims, Farb asserts that he is the only person enti-

tled to the proceeds of the policy. (Amended Compl. ¶¶ 7, 19.) The second *Grattan* factor is also satisfied. Kemper concedes it is not prejudiced by the new claim. Moreover, Kemper knew that Farb was claiming the full proceeds of the policy once the original complaint was filed. An amendment will not be disallowed merely because it asserts a new theory of recovery. *Ward Elec. Serv., Inc. v. First Commercial Bank*, 819 F.2d 496, 497 (4th Cir.1987); *Federal Leasing, Inc. v. Amperif Corp.*, 840 F.Supp. 1068, 1072 (D.Md. 1993). Accordingly, the new claim relates back to the date of the filing of the original complaint and the statute of limitations does not bar the amended complaint. *Davis*, 615 F.2d at 614.

### B.

■ Kemper also argues the amended complaint is futile because Farb's predecessor trustees unconditionally accepted the payment of benefits under the suicide provision of the policy. Kemper, therefore, asserts that DiPietro and Kopp were duty bound to either reject the payment of premiums paid on the policy or qualify that their acceptance of the benefits was without prejudice to future claims for additional benefits under the policy. Kemper's argument fails, however, because the earlier trustees' acceptance and negotiation of the check from Kemper does not constitute accord and satisfaction.

■ To establish the affirmative defense of accord and satisfaction, a defendant must prove three elements:

1. a bona fide dispute has arisen between the parties as to the existence or extent of liability,

2. subsequent to the arising of that dispute, the parties entered into an agreement under the terms of which the dispute is compromised by the payment by one party of a sum in excess of that which he admits he owes and the receipt by the other party of a sum less in amount than he claims is due him, all for the purpose of settling a dispute, and

3. a performance by the parties of that agreement.

*Parker v. Prudential Ins. Co.*, 900 F.2d 772, 776 (4th Cir.1990). Kemper is unable to establish the second element.

The only evidence offered by Kemper is the check issued to Kopp and DiPietro (and deposited by them) and an April 15, 1999 letter from Kemper to Kopp and DiPietro informing them they were receiving a check in the amount of $1,149.60 pursuant to the suicide clause in the policy. The letter, however, does not purport to be a final settlement or agreement of any disputes relating to the policy. In fact, the letter expressly states: "If you believe there are any additional facts which should be taken into consideration by the Company, or if you have any additional information for us to review, please let us know and we shall be happy to again evaluate this matter." (Def.'s Ex. 4 at FK 000403.) Moreover, Kemper did not pay Kopp and DiPietro a sum in excess of that which it admitted it owed. Rather, Kemper simply issued a check to Kopp and DiPietro for the minimum it conceded it was required to pay. Overall, there is no evidence a dispute over benefits existed at the time the check was issued by Kemper. Even assuming a dispute did exist, Kemper gave no consideration to Kopp and DiPietro for settlement of that dispute. Thus, the defense of accord and satisfaction fails.

Because the new claim in the amended complaint is not futile, the motion to amend will be granted. A separate order is being entered herewith.